# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
*11:24 am, Nov 04, 2025*
**JEFFREY P. COLWELL, CLERK**

Riley Doe, Plaintiff

v.

Steamboat Springs RE-2 School District,

Thomas Valand,

Daniel Bloom, Defendant(s).

## COMPLAINT

| NOTICE |
|---|
| Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. |
| **Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.** |

## A.    PLAINTIFF INFORMATION

*Riley Doe*
*rileydoevsssd@gmail.com*

*Plaintiff proceeding under pseudonym*
*Contact and address information filed under seal pursuant to D.C.COLO.LCivR 7.2*

## B.    DEFENDANT(S) INFORMATION

Defendant 1:    Steamboat Springs RE-2 School District
325 7th Street
Steamboat Springs, CO, 80487

970-871-3199

Defendant 2:    Thomas Valand
c/o Steamboat Springs High School
45 E Maple Street
Steamboat Springs, CO 80487

tvaland@ssk12.org

Defendant 3:    Daniel Bloom
c/o Boulder High School
1604 Arapahoe Ave
Boulder, CO 80302

720-561-2232
daniel.bloom@bvsd.org

2

C.    **JURISDICTION**

Federal question pursuant to 28 U.S.C. § 1331 (claims arising under the Constitution, laws, or treaties of the United States)

> 42 U.S.C. § 1983
> 20 U.S.C. § 1681 (Title IX)
> Americans with Disabilities Act
> Section 504 of the Rehabilitation Act

This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as they are so related to the federal claims that they form part of the same case or controversy.

Diversity of citizenship pursuant to 28 U.S.C. § 1332 (a matter between individual or corporate citizens of different states and the amount in controversy exceeds $75,000)

Plaintiff is a citizen of the State of California

Steamboat Springs RE-2 School District is a Colorado Local Government entity (54901)

Thomas Valand is a citizen of Colorado

Daniel Bloom is a citizen of Colorado

**D.    BACKGROUND**

**a. There was a pervasive attitude at Steamboat Springs High School (SSHS) that it was acceptable to exclude, segregate, and disregard Plaintiff during school activities on the basis of gender.**

1.    Towards the end of the 2021-22 school year, at Steamboat Springs High School (SSHS), Plaintiff was informed by the head of the LGBTQ+ club at the time, regarding Student A and their friends, that Plaintiff would not be able to participate with them in the lunchroom because "they're all girls and [Plaintiff] is a boy," or something along those lines. When Plaintiff pushed back, the student head of the LGBTQ+ club doubled down, saying something along the lines of "that's just the way it is." As a result, Plaintiff believed such discrimination was acceptable due to their perceived gender.

2.    During a speech and debate bus ride in the 2021-22 school year, Plaintiff was told they were "hovering" and behaving in an inadvisable manner by a student as they attempted to participate in group conversations (all participants presented female, participants included Student A) happening during the bus ride. In reality, Plaintiff was interested in participating but scared to speak. This demonstrates a cultural attitude that Plaintiff did not belong due to their gender, and that other students' discomfort was more meaningful and valid than Plaintiff's right to participate and fully enjoy the benefits of the educational institution.

3.    In one incident, a friend of Student A's spread false and gendered allegations ("[Plaintiff] was following [a student] in the hallways") and communicated them to others behind Plaintiff's back in an apparent attempt to further socially isolate and emotionally harm Plaintiff.

4

4.      This discriminatory culture enabled some students to systematically and deliberately bully and exclude Plaintiff from community participation in class and in extracurricular activities with little to no social or institutional consequences. Some students made it clear to Plaintiff they did not belong and were not allowed to participate in class discussions, sending the message that Plaintiff's existence and participation in the space was objectionable.

5.      In a class in the 2021-22 school year, Student A, a sophomore at the time, remarked to the class something along the lines of "I should find a junior to take me to Prom." No one reacted. Plaintiff, wishing to express a similar sentiment, said something along the lines of "I should also find someone to take me to prom." Student A and a different student nearly instantly attacked Plaintiff's statement, asserting that Plaintiff shouldn't go to prom, and when Student A was pushed on why, they said "because [the other student] said so." While Plaintiff cannot determine the precise motivation behind this difference in treatment, it was disproportionate, potentially drew on gender norms, and clearly attempted to put down Plaintiff.

**b. Students A and B did not routinely engage in class in the 2021-22 school year.**

6.      In class, Student A would talk mainly with a friend (Student X)

7.      Plaintiff and Student B would talk mainly with each other.

8.      Plaintiff, Student A, Student B, and Student X all shared a table.

9.      Plaintiff does not recall Student A whispering with Student X or leaving to work or talk outside without inviting others.

10.     At the end of the school year, the class went on a school-sponsored trip to a restaurant. Student A invited Student X and Student B to go in their car, while Plaintiff had to

5

ask to come along, despite sharing a table with Student A, B, and X. This shows while Student A and B may not have been close or interested in participating, they were seen as a valid peer.

11.     The occasional times when Student B was not present and Plaintiff attempted to participate with Student A and Student X, Student A disregarded and refused to allow Plaintiff to participate and would shut Plaintiff down with phrases such as "you should do your work" while continuing to socialize in front of Plaintiff.

12.     The occasional times when Student X was not present, Student A would talk with Student B. Likewise, Student A would disregard Plaintiff and refuse to acknowledge or allow Plaintiff to participate.

13.     At the end of the school year, Student X changed classes, leaving Student A, B, and Plaintiff in the class.

**c. Plaintiff was systematically humiliated, excluded, and bullied in French class in the 2022-23 school year**

14.     Plaintiff was systematically humiliated, excluded, and isolated from a mutual friend (Student B) on a near-daily basis (every class session) in French class at Steamboat Springs High School (SSHS) in the 2022-23 school year.

15.     Student A would converse and socialize with a mutual friend at the time, Student B, in class, in front of Plaintiff while systematically disregarding Plaintiff's attempts to participate.

16.     Plaintiff didn't want any issues. Plaintiff wanted to be treated with respect as a valid participant in class, and didn't want conflict with anyone. Initially, Plaintiff bent over backwards to assume good faith on Student A's end, and respected Student A's initiative.

6

Plaintiff told themselves that, "Oh, maybe [Student A] is uncomfortable. Maybe I'm not girly enough. I should keep working hard to accommodate them and be positive and kind, and things will get better."

17.     Over time, Plaintiff consistently made many attempts, in good faith, to fit in, accommodate, and engage with and participate in the conversations happening in front of them, in class, with the mutual friend. Student A intentionally and systematically shunned, refused acknowledgment, and treated Plaintiff as invisible, with no communication, reason, respect, or human dignity. Student A and Student B consistently talked warmly, smiled, shared, whispered, and engaged happily with each other while Plaintiff was systematically disregarded or shut down by Student A when trying to participate, and was relegated to watching. This behavior was inherently humiliating. The message was clear. "We matter, you don't. You don't count here, you're not a part of this, you aren't allowed to be, and your attempts to participate are disruptive and problematic." The message led to Plaintiff feeling ashamed and problematic for wanting to participate in class.

18.     On the rare occasions when Plaintiff refused to accept Student A's deliberate disregard of Plaintiff and kept attempting to participate, Student A would shut Plaintiff down with statements such as "you should do your work" while continuing to socialize and engage amicably with Student B and others in front of Plaintiff, isolating and humiliating Plaintiff. This message was not an occasional, neutral redirection. It represented the consistent and targeted message to isolate and degrade Plaintiff while reinforcing the idea that Student B and others were welcome and valued. These statements and attitudes functioned to undermine Plaintiff's attempts to connect in class and belong as part of their community, humiliating Plaintiff and

enforcing a hierarchy where they didn't count and weren't worth acknowledging.

19.     Student A would often whisper with Student B in class. In many cases,

immediately after these whispers, Students A and B would leave to work outside or socialize

together in the halls, disregarding and isolating Plaintiff. Plaintiff bent over backwards to think,

"oh, maybe they didn't realize [Plaintiff] wanted to participate, oh, maybe it is a neutral choice."

But that couldn't have been true. They must have known Plaintiff was interested in participating

due to Plaintiff's repeated, good-faith attempts to participate and show interest. Plaintiff does not

recall Student A behaving this way the prior year while Plaintiff was not attempting to

participate. Due to the nature and circumstances of the event, the only logical conclusion is

whispering in front of Plaintiff and subsequently leaving to work outside or socialize in the halls

together was a deliberate choice to isolate, humiliate, degrade, and erase Plaintiff while

strengthening their bond and pressuring Student B to go along with the bullying. When one looks

at the circumstances and message, it becomes clear this was an attempt to deny Plaintiff equal

standing and access in class.

20.     In a misguided bid to end the abuse, Plaintiff attempted to "fit in" and be more

"girly." Plaintiff went out of their way to be respectful, accommodating, and kind. Despite this,

Student A continued systematically going out of their way to prevent Plaintiff from participating

before they had a chance to meaningfully do so, while openly performing closeness, kindness,

and inclusivity with Student B in front of Plaintiff. Plaintiff later came to understand that Student

A's conduct could not reasonably be explained as good-faith discomfort or ordinary closeness or

preference. Rather, the deliberate and systematic exclusion appeared calculated to control and

degrade Plaintiff and strengthen their bond with Student B, taking advantage of Plaintiff's

confusion and willingness to accommodate to isolate Plaintiff and create an environment in which Plaintiff did not belong and was not worthy of even basic social acknowledgment and participation. Student A's behavior was coercive and intimidating, trapping and isolating Plaintiff into a lesser position where they were denied access to basic class acknowledgment and participation.

21.    Student A's message was clear: "We matter and belong, you don't. We count, you don't." Plaintiff was not allowed to participate, and wasn't even worthy of basic consideration or acknowledgment. This is bullying and denial of access in its most basic form.

22.    Plaintiff would sometimes go outside in the halls to break down in tears. Plaintiff routinely experienced severe panic and severe distress in anticipation of and during French class.

23.    Plaintiff wrote a letter to Student A, attempting to address the harmful behavior in question. Student A responded with something along the lines of "you should talk to your therapist" demonstrating a conscious choice not to address the harmful behavior they were perpetrating or Plaintiff's legitimate interest of participation in class with their friend.

24.    In one instance, after many months of the systematic bullying in class, Student A mentioned to Student B something along the lines of how "[They] found someone to go to the Taylor Swift concert with." Student B lamented they were not able to come with due to some logistical constraint. Plaintiff, also a fan of Taylor Swift and wanting to show interest in participating, suggested that they could come with. While Student A's response was simply "no," Student B joined in to reinforce the bullying dynamic, telling Plaintiff "don't ask to be invited." While there can be many legitimate reasons to refuse an invitation, telling someone they can't even ask goes far beyond any legitimate interest. It functions to degrade and shame the speaker

9

for advocating for themselves, and reinforce and legitimize the bully's control over who does
and does not belong or count. Student B aligning with Student A's bullying highlights the
abusive and coercive nature of the environment and Student A's behavior, going far beyond any
legitimate conflict or dispute. Student B likely sided with Student A's abuse since Student A
went out of their way to make Student B feel valued and safe, while shunning Plaintiff and
framing Plaintiff as a problem for wanting to participate in class. Going along with this dynamic
likely functioned to reinforce Student B's sense of safety and belonging, at the expense of
Plaintiff's personhood and ability to access education.

      25.    At some point towards the end of December 2022, Plaintiff raised concerns with
Student B about the ongoing exclusion from class. After raising concerns, Student B began
avoiding Plaintiff. Upon further inquiry by Plaintiff, Student B accused Plaintiff of trying to
separate them and Student A. Student B maintained their relationship with Student A. Given
Student A's social dominance and the established pattern of targeted exclusion and isolation
toward Plaintiff, it is reasonable to infer that the exclusion, bullying, and humiliation Student B
witnessed every day in class had caused them to internalize the message that the intimate nature
and safety of their bond depended on putting Plaintiff down and preventing Plaintiff from
participating as a peer in class. As a result, Student B effectively sided with the bully and
punished Plaintiff for speaking up. This further caused Plaintiff to feel problematic and ashamed
for wanting to participate in class. This supports the intimidating, coercive, and oppressive nature
of the environment, making it unsafe for Plaintiff to address the situation, and further reinforcing
the message that Plaintiff's basic dignity didn't matter and that Plaintiff was problematic for
wanting to participate. Additionally, the otherwise unfounded accusation of trying to separate

10

them may have been based in gender stereotypes ("the boy is trying to separate the girls") and bullying dynamics: Student A was actively and deliberately separating and isolating Plaintiff, but because Student B was benefiting from the situation and confronting it felt risky, blame was shifted onto Plaintiff, the easy and accommodating target, instead.

26.     At the end of the year, Plaintiff questioned Student A on why they were excluded in class. Student A responded something along the lines of, "[Student B] is one of my closest friends and I did not feel comfortable including you." While this could make sense for sensitive or personal topics, such as, for example, a family tragedy, that couldn't be further from this situation. It was every day, every thing, in class, in front of Plaintiff, as Plaintiff actively and consistently attempted to participate. There is no legitimate "privacy" argument here. Additionally, Student A and B did not appear close prior to the school year. Instead, this statement appears to confirm the abusive intent behind Student A's conduct, directly linking their intimacy with Student B to Plaintiff's exclusion in class. Student A's statement, when considered in context, confirms Student A's bullying was intended to enforce a social hierarchy, elevating and intensifying their bond with Student B while enforcing a reality where Plaintiff did not matter or count as a participant in class.

27.     Given the deliberate, systematic, and public nature of the exclusion, the apparent lack of prior close friendship, Student B's gradual support of Student A's conduct, Student B's unfounded allegation that Plaintiff was trying to separate them by merely expressing their wish to participate in class, and Student A's justification, it appears the intimate nature of the bond between Student A and Student B was built, at least in part, on bullying Plaintiff and denying Plaintiff equal access to the classroom. The message from Student A was, "we count, you don't,

we matter, you don't, we have value, you don't, we belong, you don't" serving to manufacture belonging, intimacy, and exclusivity at Plaintiff's personal expense and pressure Student B to go along with it. This deliberate and calculated exclusion and humiliation deprived Plaintiff of equal access to education and caused lasting harm including years of social isolation and PTSD. Student A and Student B have maintained a relationship to this day, and can be seen together on Instagram.

28.     The framing and shaming Plaintiff as a problem for showing up to class and wanting to participate, by both the bully and eventually a friend, and eventually the institution itself, caused Plaintiff severe emotional distress. Plaintiff's inherent presence and basic wish to participate in class and not be incessantly humiliated was recast as a problem; as an issue to be "fixed." This is what happens when a bully targets a vulnerable and confused person in a misguided attempt to feel better about themselves or more in control of their life and relationships.

29.     As a result of the discriminatory treatment and bullying by other members of the community in the past, along with their interest in computing and the stereotypes that were imposed onto them as a result, Plaintiff was conditioned to believe their treatment was natural and, as a result, did not recognize the abusive and coercive nature of the behavior. Instead, Plaintiff believed that they were not "girly enough," or that they were socially inept and somehow genuinely problematic for showing up and wanting to participate as a peer in class. This belief was not grounded in fact, but rather the repeated message that Plaintiff's normal attempts at participation were inappropriate.

30.     This conduct constituted a pattern of physical acts and gestures, such as

12

deliberately turning away, whispering, and exiting together in front of Plaintiff intended to humiliate and coerce Plaintiff into isolation. These actions meet the statutory definition of bullying under C.R.S. § 22-32-109.1 (1)(b).

31.     As an analogy, consider this: Student A decided who Plaintiff was and where Plaintiff belonged to make them comfortable, and bound Plaintiff to that decision in class using coercion and intimidation. It is no different than this situation, often targeted at women:

"I think you should go back to the kitchen and get tea for us, and sit silent in the corner taking notes."

"I'm a mature, full person who is totally capable of fully participating."

"Well, I don't care what you want or think, you should go back to the kitchen because that's where I feel comfortable with you being, and I'm going to take steps to make it impossible for you to participate here, regardless of what you do or how much you contribute or accommodate."

It is bullying, and harassment/hostile environment when based on a protected class.

32.     At the end of the day, all Plaintiff wanted was to be treated like any other student. Plaintiff wanted to be allowed to participate in class, belong as part of the group, and make friends. Plaintiff didn't seek special treatment. All Plaintiff wanted was to not be denied access, judged, isolated, bullied, or harassed for who they were, or for not fitting into who someone else thinks they should be. Plaintiff wanted to be seen as a participant in class, as a peer with equal dignity and standing who was capable of participation and conversation, not an object to be managed, contained, or avoided.

**E.     FACTUAL ALLEGATIONS – BASIS FOR ALL CLAIMS**

**a. Steamboat Springs School District (SSSD) has a bullying prevention policy as mandated under state law**

33.     As mandated under C.R.S. § 22-32-109.1, SSSD has a bullying prevention policy.

34.     This policy can be found at

docs.google.com/document/d/1_RpJ3_R3r7VrfvilkESskcin_iav4J71m3kPLjQxVkM/edit?tab=t.0

**b. Defendant Valand is a Licensed Social Worker (LSW) and Steamboat Springs High School's (SSHS) designated mental health professional and social worker.**

35.     Defendant Valand is a Licensed Social Worker (LSW.0009925333) with a Masters in Social Work (MSW/Clinical / School Social Work) from Colorado State University. He graduated with a 3.8 GPA, Magna Cum Laude. See linkedin.com/in/thomas-valand-lsw-4588395

36.     Defendant Valand is SSHS's designated mental health professional and social worker. See steamboatschools.net/departments/mental-health

**c. Plaintiff counseled with Defendant Valand for several months at SSHS**

37.     At some point at or around January 2023, Plaintiff began working with Defendant Valand at Steamboat Springs High School.

38.     Over the span of a few months, Plaintiff visited Defendant Valand many times, confused and in emotional distress, attempting to understand what was going on in the classroom, and why Plaintiff was being pushed out, isolated from a friend, and persistently humiliated. Additionally, Plaintiff expressed confusion and sought clarity on the cause of Plaintiff's distress.

14

**d. Defendant Valand was aware of the hostile environment Plaintiff was enduring in class**

39.     Plaintiff expressed to Defendant Valand that they were being isolated from a mutual friend in class.

40.     Plaintiff expressed and Defendant Valand understood that they were being treated as if they didn't exist.

41.     Plaintiff expressed and Defendant Valand understood how the students would leave together and isolate Plaintiff.

42.     Plaintiff expressed and Defendant Valand understood how the students would systematically and openly perform closeness as a means to enforce and signal that Plaintiff was unwelcome to participate in class.

43.     Plaintiff expressed and Defendant Valand understood that they felt unwanted and problematic showing up to class and wanting to participate.

44.     Defendant Valand understood Plaintiff simply wanted to belong with their peers and make friends, and maintain their friendship with Student B.

45.     Plaintiff expressed several times that they were not romantically interested with any of the students involved.

46.     Plaintiff informed Defendant Valand that they felt treated differently due to their gender, and wanted to be treated as if they were a girl.

47.     Plaintiff communicated to Defendant Valand their misguided belief that they were socially inept. Plaintiff sought guidance from Defendant Valand on what they were supposedly doing wrong so that the other students would allow Plaintiff to participate.

15

48.     Plaintiff informed Defendant Valand of some awkward things they said to Student A at a social event over a year prior, in a contrived attempt to rationalize and justify the constant abuse they were enduring in class.

49.     Defendant Valand understood and acknowledged that the situation was causing Plaintiff severe emotional distress and material disruption in their ability to focus and to participate in and benefit from class and school life.

**e. Defendant Valand framed Plaintiff's distress and desire to participate in class as something inappropriate, obsessive, and dangerous, that could get Plaintiff in serious trouble.**

50.     Defendant Valand characterized Plaintiff's wish to participate with their friend (Student B) in class as something to the effect of an "infatuation," despite Plaintiff's assertions at the time it was not romantic at all.

51.     Defendant Valand characterized Plaintiff's wish to participate in class as "aggressive." Defendant has since explained this was because they believed Plaintiff was seeking "affection" and "targeting" the students, despite the fact Defendant was aware this was happening in every class and Plaintiff explicitly disclaimed romantic interest.

52.     Defendant Valand told Plaintiff Student B was "not [their] friend" or something very similar, dismissing Plaintiff's objections to the contrary.

53.     In response to Plaintiff's concerns, Defendant Valand said something along the lines of "with friendship it doesn't have to be fair." However, in context, this comment did not address friendship at all. It functioned to excuse targeted exclusion in class and reassert the authority of those enforcing it, signaling to Plaintiff that fairness and participation in class were

16

privileges controlled by others rather than rights.

54.    Throughout the sessions with Defendant Valand, and in response to Plaintiff's attempt to understand, Defendant Valand expressed concern that Plaintiff was problematic for "not getting the social cue" that Plaintiff was not welcome to participate in class – misleading Plaintiff further into low self esteem and distress by supporting the bullying.

55.    Defendant Valand put forward the idea that Plaintiff could be intimidating Student B and making them uncomfortable as justification for the way Plaintiff was treated.

56.    At the end of Plaintiff's routine interactions with Defendant Valand, Defendant Valand characterized Plaintiff's wish to participate in class as "stalking behavior" and something along the lines of "the chase." Defendant Valand warned Plaintiff that they could get in trouble with law enforcement "if people get scared," and that this could become "quite the problem" for Plaintiff, and told Plaintiff they would no longer support them in this area. Once again, Defendant Valand sided with the bullying, reinforcing the message that Plaintiff was inappropriate, predatory, and dangerous, for wanting to participate in class with their peers.

57.    Defendant Valand has since asserted that they believed Plaintiff could not demand to be treated as if they existed in class.

58.    Defendant Valand discouraged Plaintiff from self-advocating, characterizing peers' exclusion of Plaintiff as "respectful" and implying that Plaintiff's attempts to participate were inappropriate and threatening.

59.    In a recent email, Defendant Valand framed Plaintiff's concerns as "frustration with the classroom environment and culture of the school that you believed contributed to your feelings of being chronically ignored by [Student B] and her friend group." Defendant Valand

17

acknowledged Plaintiff raised concerns in "numerous meetings" with himself and Dan Kholer, as well as in an email Plaintiff purportedly sent to the school board "claiming the existence of a toxic social environment at the high school." Despite Valand's awareness of Plaintiff's distress, isolation, and numerous raised complaints, Valand dismissed Plaintiff's attempts to raise concerns as "social mistakes," demonstrating deliberate disregard for Plaintiff's rights and access to class and the educational institution as a whole.

60.     While Plaintiff was bending over backwards, trying to believe the best in people and believe the students' message was somehow neutral and not hostile, Defendant Valand clearly understood the deliberate, degrading, and exclusionary message they were sending. Yet, he chose to back it up, shame Plaintiff for not recognizing the abusive message, and frame Plaintiff as predatory and inappropriate to Plaintiff and those around Plaintiff for not being able to "respect" being bullied in class.

61.     In summary, Defendant Valand reframed Plaintiff's legitimate reports of harm as misconduct, knowingly disregarding the visible reality of Plaintiff's experience and distress. Defendant Valand knowingly reaffirmed and actively supported the students' message that Plaintiff was inherently problematic and unwanted for showing up to class, warning Plaintiff of potential serious consequences for continuing to push back. The message, essentially was, "You're not allowed to exist or participate in class because other kids don't want you to, and you could get in trouble with the police if you can't accept that. And no, it doesn't have to be fair."

**f. Defendant Valand's conduct and actions were discriminatory and retaliatory.**

62.     Defendant Valand had no concrete reason to believe Plaintiff was intimidating others or otherwise causing discomfort. On the contrary, Defendant Valand characterized

18

Plaintiff as "very polite" in their interactions with Plaintiff.

63.     Defendant Valand had no non-discriminatory reason to believe Plaintiff was "infatuated" or that Student B had not been their friend.

64.     As a justification for "the chase," "stalking behavior," getting in trouble with law enforcement, and denial of support, Defendant Valand cited the fact that Plaintiff was "you know, a larger male, and then there's a female."

65.     Defendant Valand has since suggested that, because Plaintiff had "ruminated" on the issue for a long time, Plaintiff "wanted to … I dunno," and said this was the kind of thing that made "females, especially" feel worried and concerned.

66.     Defendant Valand's characterizations of Plaintiff's distress and concerns recast Plaintiff's disability (severe distress/PTSD/inability to concentrate or think) as predatory.

67.     Defendant Valand's perspective that Plaintiff was "missing a social cue" that they were unwelcome in class framed Plaintiff's presence in class as illegitimate due to their perceived disability (social/communication disability).

68.     Defendant Valand had no legitimate, non-discriminatory reason to tell Plaintiff that they could not demand to be treated as if they existed in class. This belief is contrary to educational standards and the obligation to ensure equal access for all students.

69.     Defendant Valand put Student A and B's "feelings" over Plaintiff's visibly noted distress and right to exist and participate with dignity in the classroom.

70.     Defendant Valand had no legitimate, non-discriminatory basis to dismiss Plaintiff's numerous complaints and distress as "social mistakes."

71.     In one isolated incident, Defendant Valand made a remark Plaintiff experienced

19

as distressing and offensive. Plaintiff does not recall exact words used, but understood the remark to redirect blame for the mistreatment Plaintiff was experiencing. As a result, Plaintiff attempted to continue the conversation with Defendant Valand to obtain clarity on what was said. This resulted in Plaintiff following Defendant Valand to their car while actively attempting to obtain clarity on what was said. Plaintiff did not physically block Defendant, threaten Defendant, or coerce Defendant in any way. Defendant Valand, however, mischaracterized this incident as evidence that Plaintiff was socially inept and incapable of recognizing social cues, rather than a frantic attempt to obtain desperately needed clarity. Plaintiff had not been aware this was a big concern, as it was common for drama troupe kids to walk out to their car with the teacher after drama troupe. Defendant Valand has since referred to Plaintiff's general demeanor in their interactions as "very polite."

72.    Shortly after this incident, Defendant Valand met with Plaintiff's parents, and communicated to them that Plaintiff had trouble respecting boundaries, and expressed concern Plaintiff could get in serious trouble if they did not learn what they were doing. Defendant Valand was aware of how Plaintiff was isolated from a friend and treated as less than human. However, to the best of Plaintiff's parents' recollection, Defendant Valand did not share any of those details with Plaintiff's parents, instead telling Plaintiff's parents something along the lines that Plaintiff was obsessed with a girl, and not taking no for an answer.

73.    In another case, Plaintiff waited outside Defendant Valand's office while he was meeting with another student in order to speak with him when he became available. Plaintiff's intent was simply to obtain support and assistance. Defendant Valand later characterized this conduct as something along the lines of creepy and inappropriate, even though waiting outside a

20

staff member's office to speak with them is an ordinary way students seek help. This characterization was shared with Plaintiff's parents in the meeting.

74.    Defendant Valand appears to have used Plaintiff's recognized disability (severe distress), perceived disability (social ineptitude), and sex/gender stereotypes to justify Plaintiff's exclusion from class, actively supporting the bullying, refusing support, and framing Plaintiff as a predator.

75.    In summary, with knowledge of Plaintiff's vulnerability and intentions, using their confusion and attempt to understand as a basis, Defendant Valand framed their distress and legitimate needs as predatory and inappropriate, enforced bullying in class, and shut down their attempts to self-advocate.

**g. Defendant Valand was responsible for Steamboat Springs School District's response to Plaintiff's concerns.**

76.    The district's organizational chart can be found at docs.google.com/drawings/d/1tNF8tw6RGQZXDB3RDYt15L8GC2Ef0b0FERiEXBMQNAE/edit

77.    According to the organizational chart, Mental/Behavioral Health services are under the district's behavioral health manager (Shelby DeWolfe), not under any principal or assistant principal. As such, Defendant Valand was the authority on site responsible for the district's response to Plaintiff's situation.

78.    Plaintiff raised concerns with Katy Lee, the president of the school board, in conversations during the school's drama troupe. On information and belief, the district referred the situation to Defendant Valand. This is supported by an email from Defendant Valand, which

21

asserted the existence of an email Plaintiff purportedly sent to the school board, "claiming the existence of a toxic social environment at the high school." Plaintiff never sent such an email, nor informed Defendant Valand of their conversations with Katy Lee.

79.     Defendant Bloom had been aware of the situation and it's ongoing nature. In response to Student B ghosting Plaintiff and giving Plaintiff the side eye after Plaintiff ceased participating in class or interacting with their peers for months, Defendant Bloom still emphasized respecting Student B's "choices" and informed Plaintiff that "the ball was in her court," further isolating Plaintiff, scaring Plaintiff from speaking up, and preventing Plaintiff from recognizing or addressing the bullying. This conduct is in line with Defendant Valand's narrative, and Defendant Valand stated that they likely worked with and informed Defendant Bloom that Plaintiff had issues respecting boundaries. This demonstrates supervisory authority as the school's designated mental health professional over the other school counselors.

80.     Plaintiff had been raising concerns concerns with Dan Kholer (assistant principal/on information and belief a deputy Title IX coordinator at the time), in an attempt to address the way they were being treated in class and more broadly at school. While Dan Kholer provided limited support, he acknowledged he was not fully qualified to handle Plaintiff's situation, and that Defendant Valand was the best person to work with regarding their concerns.

81.     Defendants Valand and Bloom's actions reflect a discriminatory custom of minimizing and dismissing Plaintiff's visibly severe distress while reinforcing Student A and B's purported "right" to deny Plaintiff access to class, discriminating on the basis of Plaintiff's sex and perceived and actual disability. Instead of addressing, investigating, or denouncing the conduct and concerns raised, several school employees, with the possible knowledge of the

22

district and school board itself, further blamed and framed Plaintiff as predatory and concerning for continuing to show up to class and seek basic dignity and respect from their peers.

82.    **Other staff responses:** Plaintiff also occasionally communicated with Britta Bodine, a math teacher, towards the end of the year, who was aware of the situation and the harmful acts, and ultimately chose to do nothing and actively avoid engaging with it. Bodine was clearly aware of the aggression Plaintiff was enduring at the hands of their peers, stating in an e-mail "Your intentions in social relationships always came from a sincere place, even though it may not have landed well with your peers." She also knew Plaintiff was enduring distress, remarking how "I know [belonging/friendship] felt especially heavy for you at times." Despite this, Bodine chose to minimize and dismiss the distress and bullying as high school drama, suggesting Plaintiff "lean into gratitude" and think positively. However, Plaintiff continued to be bullied despite trying their best to "think positively," demonstrating the advice was ineffective and dismissive. One must create and enforce a positive environment, not simply claim to do so while normalizing, excusing, and dismissing targeted hostility and abuse.

83.    **Other staff responses:** Plaintiff also communicated with Kristin O'Connor, a math teacher, towards the end of the year, who told Plaintiff something along the lines of "we should talk it out." To Plaintiff's knowledge, she was the only employee who responded appropriately, however the bullying, distortion by other adults, and oppression was too far gone at that point for that to be a practical possibility.

**h. As a direct result of Defendants' unlawful and discriminatory conduct, Plaintiff further internalized self blame and further isolated themselves**

84.    Plaintiff ceased interacting with Defendant Valand.

23

85.     Plaintiff began eating lunch alone, previously eating lunch with Student B and mutual friends.

86.     Defendants' discriminatory actions directly intensified Plaintiff's distress. Plaintiff ceased interacting with Student A or B in and out of class to "respect their choices" and in hopes the distress would go away. Instead, Plaintiff's distress towards the situation and students involved intensified, as Plaintiff's safety in class now directly appeared contingent on their thoughts and feelings. The message of "you're the problem for showing up to class and wanting to participate" was no longer some kids being immature, it was now backed by adults, accusations of stalking and chasing, and "warnings" of potential police involvement. Defendants' discriminatory actions made the perceived power imbalance real, rendering Plaintiff even more vulnerable to the bullying Defendants' were obligated to stop. Avoiding Student A and B in class wasn't respect, it was further humiliation.

87.     Plaintiff internalized the idea that their distress and wish to participate in class was inappropriate, harmful, and unlawful. Plaintiff became unable to speak out to others, worried they would get in trouble. Plaintiff was trapped in a cycle of severe distress and need to address the ongoing bullying and humiliation, followed by intense shame, fear of consequences, and fear of being seen as dangerous and threatening for pushing back.

88.     As Plaintiff respected the bullying dynamic as instructed, the bullying got worse and caused Plaintiff even more severe distress. A few months into social isolation, upon attempting to return after leaving failed to resolve the distress, Student B began ghosting Plaintiff and giving Plaintiff the side eye. While Plaintiff cannot confirm what Student B was or was not told, the unexplained shift in their behavior, combined with similar prior instances with their

24

friends, leaves Plaintiff with the inescapable conclusion that Student B likely was told some false allegation about Plaintiff (such as "following in the hallways" cited in section D. (a.)), causing them to judge, disdain, and further isolate Plaintiff. Given the lack of any real misconduct and Plaintiff's prior experiences, Plaintiff believes any false allegations may have leveraged gendered stereotypes and fears. Addressing this possibility and expecting dignity and nondiscrimination was made impossible by Defendants' discriminatory and unlawful actions, framing of Plaintiff as a predator, and direction to "respect their choices" as they actively chose to isolate, humiliate, retaliate against, and bully Plaintiff. Everyone's discomfort was pushed onto Plaintiff, the easy target with institutional backing, while the bullying was normalized, enforced, and justified.

89.    As a result, Plaintiff felt an even more desperate need to address the harassment and abuse, but was unable to out of fear of misconduct or punishment, creating a vicious cycle of distress. The bullying stopped being something to address and became the reality of how Plaintiff deserved to be treated. Plaintiff was forced to go along with Defendant Valand and the students' narrative, fearing serious punishment for pushing back.

90.    Plaintiff believes the reason everyone was shoving things onto Plaintiff was because Plaintiff was too accommodating, confused, and scared to speak out. For the students and staff, it was simply easier to blame and shame Plaintiff rather than confront the uncomfortable truth.

91.    Defendant Valand's portrayal of Plaintiff as a predator and Defendant Bloom's reinforcement ("respect their choices") caused Plaintiff to view Student B's attempts to avoid Plaintiff and avoid facing the truth as further evidence of Plaintiff's purported inappropriate and

predatory nature. This reinforced the shame and guilt.

92.     Under the institutionally endorsed framing of Plaintiff as a predator, every legitimate effort made by Plaintiff to engage with peers, including speaking in class, seeking inclusion in group activities, or asserting the right to fair treatment, was seen by Plaintiff as inappropriate and dangerous, risking serious consequences and police involvement. This stigmatizing label effectively stripped Plaintiff of personhood both inside and outside the school environment, rendering their attempts to engage with their peers unsafe and delegitimized. This created a hostile, intimidating, and abusive classroom environment where Plaintiff was forced to accept abusive treatment and was treated as a dangerous threat for wanting to assert basic human dignity and participate in class. It revoked Plaintiff's right to exist and participate safely in class.

93.     Plaintiff was silenced, excluded, and forced to accept and "respect" ongoing peer abuse with active support from staff, and, purportedly, the police.

94.     Plaintiff's grades and test scores suffered as they desperately yet futilely attempted to push the distress away.

**i. Defendants' conduct resulted in a passive suicide attempt and severe, long-term damage to Plaintiff's mental health and ability to participate in education and life**

95.     Plaintiff internalized the idea that their distress and was inappropriate, shameful, and threatening, and were unable to meaningfully interact with others or raise concerns as a result.

96.     Plaintiff internalized the idea that they were inherently problematic for showing up to class and wanting to participate, resulting in low self esteem and a deep feelings of shame and self-hatred.

26

97.     During the summer of 2023, while camping in Ontario, Canada, Plaintiff knowingly walked on active train tracks for hours at a time with headphones and music on full blast, thinking that, "at least if [Plaintiff] was dead, [the cycles of distress] would all be over." It is well documented bullying can lead to negative outcomes such as school violence and suicide. Plaintiff is now grateful they are not dead and are able to file this complaint. Plaintiff cares about other people and would never hurt others, even as Defendants and students recklessly caused profound emotional distress and injury. However, another student subjected to the same mistreatment may have responded violently. Defendants' harmful actions put a student in extreme distress, putting Plaintiff and the community as a whole at risk.

98.     The following school year, at a different school, Plaintiff was scared to speak with their peers; afraid of being bullied and framed as inappropriate for wanting to participate in class. As a result, Plaintiff avoided interacting with their peers.

99.     Plaintiff tried to suppress the feelings of distress for around a year, trusting Defendant Valand and others around Plaintiff that their needs and wish to participate in class was inappropriate, threatening and shameful. Plaintiff tried to cope in silence, lacking support and clarity. Plaintiff was scared to share what happened with people, because Plaintiff was afraid they would turn around, blame Plaintiff, shame Plaintiff for wanting to participate, and tell Plaintiff they were the problem.

100.     This suppression and delay in recognition were direct consequences of the environment shaped by Valand's authority and the other counselors' reinforcement of the distorted narrative.

101.     After a year, Plaintiff came to the conclusion that the feelings and thoughts

weren't going away on their own, and began allowing themselves to think through and revisit what happened.

102.    Plaintiff endured severe emotional distress as they attempted to reconcile their intense distress with the distorted narrative presented by Defendants' and those who appeared to Plaintiff to support Defendants' narrative (parents, Kholer, the Student A, and Plaintiff's friend). It was a vicious cycle of Plaintiff feeling a strong need to address the humiliating conduct directed at Plaintiff, followed by strong feelings of shame, guilt, and an intense fear that Plaintiff's distress and needs were inappropriate, obsessive, and threatening and could get Plaintiff in serious trouble.

103.    Plaintiff continued to experience intrusive thoughts/flashbacks, emotional turmoil, intense shame, and negative thoughts about themselves and relationships for over a year while attempting to make sense of the situation. Plaintiff was incredibly confused and, when not experiencing severe distress, was emotionally numb. Through over a year of reflection and processing, Plaintiff slowly began to understand the true nature of the situation. Throughout this time, Plaintiff has been hiding indoors, unable to engage with their peers and participate in higher education due to feelings of intense shame and fear of being hurt and then getting in trouble for being perceived as dangerous and inappropriate.

104.    In February of 2025, an online friend of Plaintiff mentioned the situation had given Plaintiff PTSD-like symptoms. Plaintiff immediately looked up the symptoms of PTSD out of curiosity, and realized they had nearly all of them. At this point, Plaintiff started to realize what truly happened. Plaintiff previously thought they were unstable, dangerous, obsessive, and inappropriate due to the counselor and staffs' framing of their thoughts and distress. Upon

learning of PTSD, Plaintiff realized their symptoms where actually a researched, medical response to trauma. Plaintiff immediately sought a diagnosis, and was formally diagnosed with PTSD a few weeks later.

105.    Plaintiff's PTSD is directly tied to the situation at hand. For example, Plaintiff entered a state of distress which hindered their ability to think and speak during a phone conversation with Defendant Valand in June 2025. Additionally, in October 2025, after learning Students A and B were still friends, Plaintiff experienced sustained panic and was unable to sleep for two days. This is consistent with how PTSD is understood to function (a "trigger" resulting in an emotional and somatic flashback), and, represents the reality that Student A and B's relationship functioned as an institutionally endorsed weapon to isolate, humiliate and deny Plaintiff their rights in class.

106.    As a result of the severe and persistent distress, fear, and shame, Plaintiff was incapable of focusing or participating in university. As a result, Plaintiff dropped out of the Spring 2025 term, and was not able to enroll for the Fall 2025 term. This interruption in Plaintiff's education continues to affect their long-term academic and career trajectory.

107.    Defendants' framing of even the most basic demands ("treat me as if I exist in class") as unreasonable, predatory, and dangerous, has made it impossible to sustain healthy interpersonal relationships in institutional environments. Plaintiff has been unable to engage in ordinary activities required for healthy relationships such as keeping in touch with friends, setting boundaries, asking to hang out, or pushing others to treat them with respect because these activities now trigger panic and fear responses associated with being told they were inappropriate, dangerous, wrongful, or risking police intervention for wanting to connect with

29

their peers. When a person can't ask anyone to do anything, they naturally end up alone and isolated.

F.     STATEMENT OF CLAIMS

## CLAIM I

### Violation of Title IX of the Education Amendments of 1972

### (Against Steamboat Springs RE-2 School District/SSSD)

108.     Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

109.     Title IX of the Education Amendments of 1972 provides, in relevant part, that: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

110.     Title IX of the Education Amendments of 1972 applies to all public and private educational institutions that receive federal funding.

111.     Steamboat Springs RE-2 School District (SSSD) is a public school district funded with $2,139,335 of federal funding in the 2022-2023 school year.

112.     Defendant Valand and Defendant Bloom were employees acting in their official capacities at Steamboat Springs High School (SSHS), a secondary school in SSSD.

113.     As SSHS's designated mental health professional and social worker, Defendant Valand had representative authority to respond to bullying and other behavioral/student concerns on behalf of the district, as described in section E. (g) of this complaint.

114.      In addition, SSSD delegated representative authority to Defendant Valand when,

on information and belief, they deferred to him to address the situation over Plaintiff's raised concerns.

115.    Other employees and administrators, including Dan Kholer, a deputy Title IX coordinator, were aware of the situation, and referred Plaintiff to Defendant Valand as the person responsible for handling the situation, citing the fact they were not qualified to formally address the situation.

116.    School counseling and adult supervision is a benefit of most education programs, including SSHS.

117.    As described in section E. (f), Defendant Valand's conduct was discriminatory on the basis of sex, gender, and presumed sexual orientation.

118.    Defendant Valand's support of the bullying and refusal to support Plaintiff due to their sex, gender, and presumed sexual orientation constituted a violation Plaintiff's right to the equal benefits of counseling and adult support.

119.    Defendant Valand's and the other staffs' active support of the visibly distressing bullying due to Plaintiff's sex, gender, and perceived sexual orientation created a hostile environment resulting in a denial of Plaintiff's right to equal participation and equal access in class.

120.    Defendant Valand's assertion that Plaintiff could not demand to be treated as if they existed in class directly communicated an intent to deny Plaintiff equal participation and access in class.

121.    Instead of supporting Plaintiff and addressing the bullying, Defendants' stigmatized and characterized Plaintiff's distress and wish to participate in class as predatory,

inappropriate, and risking police involvement. By framing Plaintiff as a predator, every legitimate effort made by Plaintiff to engage with peers, including speaking in class, seeking inclusion in group activities, or asserting the right to fair treatment, was seen as inappropriate and dangerous, risking serious consequences and police involvement. This stigmatizing label effectively stripped Plaintiff of personhood within the school environment, rendering their attempts to participate unsafe and delegitimized. Such treatment created and perpetuated a hostile environment and denied Plaintiff's right to access education on the basis of sex, gender, and perceived sexual orientation.

122. Defendant Valand's warnings of police involvement, refusal to engage with this subject, and characterization of Plaintiff as predatory for expressing legitimate needs in the classroom and their visible distress, constituted retaliation for raising legitimate concerns of bullying and discrimination in good faith, enforcing denial of Plaintiff's right to equal participation and equal access in class.

123. Defendants' discriminatory assumptions about the nature of Plaintiffs' situation led them to fail to respond to bullying as required under the district's anti-bullying policy and state law.

124. This was an open, coordinated institutional decision to frame Plaintiff in a specific, discriminatory, and stigmatizing manner for wanting to participate equally in class with their peers, to disregard their concerns, and to prevent Plaintiff from equally accessing education, led by Defendant Valand and supported by other counseling staff.

125. These decisions constitute illegal discrimination by the institution resulting in denial of benefits, a hostile environment, exclusion from participation, and subjection to

discrimination in violation of Title IX of the Education Amendments of 1972.

126.    These decisions constitute deliberate indifference to known student harassment resulting in denial of benefits, exclusion from participation, and subjection to discrimination in violation of Title IX of the Education Amendments of 1972.

## CLAIM II

### 42 U.S.C. §1983: Violation of Fourteenth Amendment Equal Protection

### (Against Thomas Valand in their personal capacity)

127.    Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

128.    Defendant Valand was an employee acting in their official capacity as a social worker at Steamboat Springs High School (SSHS), a secondary school in SSSD. As a result, Defendant Valand was acting under color of state and local law.

129.    The Fourteenth amendment states: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

130.    Defendant Valand, in a discriminatory fashion, put Student A and B's comfort over Plaintiff's visible distress and right to participate in the classroom, refusing to assist Plaintiff and framing Plaintiff as predatory for wishing to socially engage with their peers in class.

131.    Defendants' discriminatory assumptions about the nature of Plaintiffs' situation led them to fail to respond to bullying as required under the district's anti-bullying policy and

33

state law.

132.    Defendant Valand's assertion that Plaintiff could not demand to be treated as if they existed in class directly communicated an intent to deny Plaintiff equal participation and access in class.

133.    Defendant Valand denied Plaintiff equal protection of the law.

## CLAIM III

**42 U.S.C. §1983: Violation of First Amendment Freedom of Speech**

**(Against Thomas Valand and Daniel Bloom in their personal capacities)**

134.    Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

135.    Defendant Valand and Defendant Bloom were employees acting in their official capacities as a social worker and school counselor at Steamboat Springs High School (SSHS), a secondary school in SSSD. As a result, Defendant Valand and Defendant Bloom was acting under color of state and local law.

136.    The First amendment states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

137.    Defendant Valand denied Plaintiff's right to freedom of speech, by refusing to engage with Plaintiff regarding this situation, and informing them they could get in trouble for stalking or with the police for continuing to push back against the distressing situation they were enduring in class. Defendant Valand has stated that they thought Plaintiff could not demand to be

34

treated as if they existed in class.

138.     Defendant Valand retaliated against Plaintiff for engaging in protected speech, by framing them as inappropriate and predatory to other staff and parents, and informing them they could get in trouble for stalking or with the police for continuing to push back against the distressing situation they were enduring in class.

139.     Defendant Bloom violated Plaintiff's First Amendment rights, suppressing Plaintiff's protected speech by instructing Plaintiff not to discuss the mistreatment further and to "respect their choices," favoring Student B's desire to avoid facing the bullying over Plaintiff's efforts to report and describe ongoing mistreatment. Rather than investigating or considering the substance of Plaintiff's expression, Defendant Bloom reinforced Defendant Valand's position, chilling Plaintiff's ability to speak out about their own distress.

## CLAIM IV

## 42 U.S.C. §1983: Violation of Fourteenth Amendment Substantive Due Process

## (Against Thomas Valand in their personal capacity)

140.     Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

141.     Defendant Valand was an employee acting in their official capacity as a social worker at Steamboat Springs High School (SSHS), a secondary school in SSSD. As a result, Defendant Valand was acting under color of state and local law.

142.     The Fourteenth amendment states: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any

person within its jurisdiction the equal protection of the laws."

143.    Defendant Valand took Plaintiff:

    a.    with knowledge they were being mistreated, bullied, and put down in class

    b.    with knowledge they were turning inwards and trying to fix themselves and understand

    c.    with knowledge they were not romantically interested at all and wanted to be treated like their peers

    d.    with knowledge of their severe distress and how the situation was affecting their ability to participate in school

    e.    and used their authority as a trusted adult and mental health professional to,

    f.    frame it as a concern that Plaintiff missed the social cue that they were not welcome in the classroom, taking advantage of Plaintiff's attempt to understand and misleading Plaintiff further into low self esteem by insidiously supporting the bullying

    g.    actively support the bullying

    h.    accuse Plaintiff of "stalking behavior" and warned of serious consequences for not respecting the bullying, framing Plaintiff as a predator

    i.    portray their distress and wish to participate as inappropriate

    j.    refuse support or engagement with Plaintiff

    k.    with no investigation or inquiry into the facts of the situation at hand.

l.      On information and belief, frame Plaintiffs' behavior as inappropriate to

their parents and other staff, further shaming and isolating them.

Plaintiff believes this conduct (including other conduct described in this complaint) meets the

"shocks the conscience" test, knowingly supporting and enforcing a dangerous situation.

144.    As a direct result of Defendant Valand's actions, Plaintiff engaged in a passive

suicide attempt, and endured severe emotional and mental distress and anguish for years on end.

Plaintiff has been diagnosed with PTSD, and has been unable to engage with their peers or

otherwise participate as described in section E. (h) and E. (i)

145.    Defendant Valand violated Plaintiff's right to substantive due process as per the

state-created danger doctrine.

## CLAIM V

### Municipal Liability under *Monell*: Custom, Policy, or Practice

### (Against Steamboat Springs RE-2 School District/SSSD)

146.    Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully

set forth herein.

147.    As described in Claims II, III, and IV, Plaintiff's constitutional rights were

violated.

148.    On information and belief, school counselors, SSHS's designated social worker,

and SSSD were aware of, stood by, and supported the acts involved. Therefore, they constitute

decisions officially adopted or promulgated by those who may fairly be said to represent official

policy under *Monell*.

149.    On information and belief, SSSD has a widespread practice/custom (Custom A)

of viewing girls/female's discomfort as more important and valid than violations of others'/disabled persons' rights and visible distress. This is exemplified by Valand and Bloom's inappropriate conduct and attempt to suppress Plaintiff's speech, along with the awareness of the school board, and the coordination of all mentioned parties.

150.    Custom A was the moving force behind the deprivation of Plaintiff's rights under the Equal Protection Clause, as it caused school officials to affirm and adopt discriminatory narratives and blindly protect certain groups' "feelings" rather than investigate or remedy raised concerns.

151.    Custom A was the moving force behind the deprivation of Plaintiff's rights under the Freedom of Speech clause, as it caused school officials to dismiss legitimate reports of harm and silence Plaintiff to ensure specific groups' uninterrupted comfort.

152.    Custom A was the moving force behind the deprivation of Plaintiff's rights under the Substantive Due Process clause, as it caused school officials to pathologize Plaintiff's visible distress and legitimate reports of harm, while actively supporting Student A/B's harmful conduct.

153.    On information and belief, SSSD has a widespread practice/custom (Custom B) of responding to incidents of relational bullying by advising students to "find other friends" and avoid the bullying, rather than intervening or enforcing anti-bullying policies. This is exemplified by Valand and Bloom's inappropriate conduct and attempt to suppress Plaintiff's speech, along with the awareness of the school board, and the coordination of all mentioned parties.

154.    Custom B was the moving force behind the deprivation of Plaintiff's rights under

the Freedom of Speech clause, as it caused school officials to dismiss legitimate reports of harm and silence Plaintiff to ensure other students' uninterrupted comfort.

155.    Custom B was the moving force behind the deprivation of Plaintiff's rights under the Substantive Due Process clause, as it caused school officials to pathologize Plaintiff's visible distress and legitimate reports of harm, while actively supporting Student A/B's harmful conduct.

## CLAIM VI

### Municipal Liability under *Monell*: Ratification

### (Against Steamboat Springs RE-2 School District/SSSD)

156.    Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

157.    As described in Claims II, III, and IV, Plaintiff's constitutional rights were violated.

158.    On information and belief, SSSD knew about Defendant Valand's conduct and Plaintiff's raised concerns, and either affirmed, accepted, or were deliberately indifferent to Defendant Valand's assessment and unconstitutional action taken, as evidenced by the contact between Defendant Valand and the school board regarding the situation and Plaintiff's complaints of a "toxic" environment.

## CLAIM VII

### Failure to Train and Supervise

### (Against Steamboat Springs RE-2 School District/SSSD)

159.    Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully

39

set forth herein.

160.    As described in Claims II, III, and IV, Plaintiff's constitutional rights were violated.

161.    On information and belief, the training policies of Defendant SSSD were not adequate to prevent violations of the law by their employees. It is very likely and foreseeable that school counselors and designated mental health professionals will be counseling with queer, bullied, distressed, and/or disabled students.

162.    On information and belief, SSSD knew about Defendant Valand's conduct, and either affirmatively chose not to intervene or chose to support or suggest the action taken, resulting in further deprivation of Plaintiff's rights and further injury. This is evidenced by the contact between Defendant Valand and the school board regarding the situation.

163.    Defendant SSSD's failure to prevent violations of law by its employees and to provide adequate training directly resulted in suppression of protected speech. For example, perceiving Plaintiff's distress as "predatory" and as an "infatuation" caused staff to not take Plaintiff's concerns seriously and attempt to silence their speech.

164.    Defendant SSSD's failure to prevent violations of law by its employees and to provide adequate training directly resulted in the discriminatory and actively harmful conduct which caused staff to take hypothetical and secondhand discomfort more seriously than visible distress and known bullying, violating Plaintiff's right to equal protection under the law.

165.    Defendant SSSD's failure to prevent violations of law by its employees and to provide adequate training directly resulted in the discriminatory and actively harmful conduct which caused staff to support bullying and silence Plaintiff's concerns, actively creating a

dangerous situation in violation of Plaintiff's substantive due process rights.

## CLAIM VIII

## Violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act

### (Against Steamboat Springs RE-2 School District/SSSD)

166.    Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

167.    Section 504 of the Rehabilitation act applies to all programs that receive federal funding.

168.    Steamboat Springs School District (SSSD) is a public school district funded with $2,139,335 of federal funding in the 2022-2023 school year.

169.    Defendant Valand and Defendant Bloom were employees acting in their official capacities at Steamboat Springs High School (SSHS), a secondary school in SSSD.

170.    As SSHS's designed mental health professional and social worker, Defendant Valand had representative authority to respond to bullying and other behavioral concerns on behalf of the district, as described in section E. (g) of this complaint.

171.    In addition, SSSD delegated representative authority to Defendant Valand when, on information and belief, they deferred to him to address the situation over Plaintiff's raised concerns.

172.    Other employees and administrators, including Dan Kholer, were aware of the situation, and referred Plaintiff to Defendant Valand as the person responsible for handling the situation, citing the fact they were not qualified to formally address mental health issues.

173.    **Focus/Distress/PTSD**: Defendant Valand acknowledged that Plaintiff was

41

"absolutely" distressed, described how the situation occupied significant mental space, and noted that it interfered with Plaintiff's ability to focus. These facts demonstrate that Plaintiff's condition substantially limited one or more major life activities, meeting the definition of "disability" under 42 U.S.C. § 12102 and 34 C.F.R. § 104.3(j). This pattern of distress was later diagnosed as PTSD, a widely recognized disability.

    a.    Defendants stigmatized Plaintiff's severe distress, framing it as predatory, dangerous, and risking police involvement, discriminating against and stigmatizing the distress Plaintiff was enduring as a result of a hostile classroom environment.

174.    **Communication Impairment:** Furthermore, Defendant Valand regarded Plaintiff as socially inept and/or unable to read social cues. These facts demonstrate that Plaintiff's perceived condition limited one or more major life activities, as a perceived communication impairment. This meets the definition of "disability" under 42 U.S.C. § 12102 and 34 C.F.R. § 104.3(j).

    a.    Defendant Valand and Bloom used Plaintiff's perceived inability to get "social cues" as a license to dismiss Plaintiff's severe distress and bullying in class as "missed social cues", thereby denying Plaintiff equal access to class and discriminating against Plaintiff's perceived social ineptitude.

175.    On information and belief, Defendant Bloom was also aware of Plaintiff's actual and perceived disability, given Plaintiff interacted with Bloom several times, filled Bloom in on the situation, and the counselor stated they likely had correspondence with Bloom. Bloom also had correspondence with Plaintiff's parents, demonstrating awareness of the situation.

42

176.    Instead of properly addressing the disability and the bullying, Defendants' stigmatized and characterized Plaintiff's distress and wish to participate in class as predatory, inappropriate, and risking police involvement. By framing Plaintiff as a predator, every legitimate effort made by Plaintiff to engage with peers, including speaking in class, seeking inclusion in group activities, or asserting the right to fair treatment, was seen as inappropriate and dangerous, risking serious consequences and police involvement. This stigmatizing label effectively stripped Plaintiff of personhood within the school environment, rendering their attempts to participate unsafe and delegitimized. Such treatment created and perpetuated a hostile environment and denied Plaintiff's right to access education on the basis of disability.

177.    Defendants' discriminatory assumptions about the nature of Plaintiff's situation led them to fail to respond to bullying as required under the district's anti-bullying policy and state law.

178.    On information and belief, other staff members and administrators were aware of and accepted or were deliberately indifferent to the stigmatizing characterization of Plaintiff's disability, including Defendant Bloom, and one or many district administrators.

179.    Defendant Valand's warnings of police involvement, refusal to engage, and characterization of Plaintiff as predatory for expressing legitimate needs in the classroom and their visible distress, constituted retaliation for their seeking of support, enforcing denial of Plaintiff's right to equal participation and equal access in class.

180.    Defendant Valand's support of the bullying and refusal to support Plaintiff due to their disability constituted a violation Plaintiff's right to the equal benefits of counseling and adult support.

181.    Defendant Valand's assertion that Plaintiff could not demand to be treated as if they existed in class directly communicated an intent to deny Plaintiff equal participation and access in class.

182.    Plaintiff merely requested the basic right to participate equally in class, yet even this was denied on basis of disability. The fact that even that was denied underscores how far the district fell below the bare minimum required under the law.

183.    These decisions constitute discrimination, retaliation, and failure to accommodate by SSSD resulting in denial of benefits, a hostile environment, exclusion from participation, and subjection to discrimination in violation of 29 U.S.C § 794 and 42 U.S.C. § 12132.

## CLAIM IX

### Violation of CADA (C.R.S. § 24-34-601)

### (Against Steamboat Springs RE-2 School District/SSSD)

184.    Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

185.    Plaintiff incorporates by reference the allegations set forth in Claim I (Title IX) and VIII (ADA/§504) to the fullest extent applicable under Colorado law, as though fully set forth herein.

186.    As an educational institution, Steamboat Springs High School (SSHS) is a "place of public accommodation" under this statute.

187.    C.R.S. 24-34-601 states: "It is a discriminatory practice and unlawful for a person, directly or indirectly, to refuse, withhold from, or deny to an individual or a group, because of disability, … sex, sexual orientation, gender identity, gender expression, … the full and equal

enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation …"

188.    Plaintiff exhibited and Defendant Valand (and potentially other staff/administrators) were aware of Plaintiff's disability as described in Claim VIII.

189.    Defendant Valand/Bloom were employees acting in their official capacities at Steamboat Springs High School (SSHS), a secondary school in SSSD.

190.    Defendant Valand/Bloom and other SSSD employees engaged in discriminatory and unlawful practices by refusing, withholding from, and denying:

      a.    Valand: The full and equal enjoyment of the classroom, creating a hostile environment by supporting bullying, asserting Plaintiff could not demand to be treated as if they exist in class, and warning of police involvement and serious consequences for pushing back (service/accommodation)

      b.    Valand/Bloom: The full and equal enjoyment of support in the classroom (privilege/advantage). Defendant Valand/Bloom put others' comfort over Plaintiff's distress.

      c.    Valand/Bloom: The full and equal enjoyment of counseling resources (privileges/advantages)

on the basis of Plaintiff's disability, sex, sexual orientation, gender identity, and/or gender expression.

Note: the exact categories assigned here are illustrative, and are in no way exhaustive.

191.    As employees working in their official job duties, SSSD (Defendant Valand's employer and Defendant Bloom's former employer) is vicariously liable for Defendant Valand's

45

and coworkers' unlawful and discriminatory conduct.

## CLAIM X

### Extreme and Outrageous conduct

### (Against Thomas Valand in their personal capacity)

192.    Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

193.    Plaintiff alleges Defendant Valand engaged in conduct "so outrageous in character, and so extreme in degree, that a reasonable member of the community would regard the conduct as atrocious, going beyond all possible bounds of decency and utterly intolerable in a civilized community"

194.    Defendant Valand took Plaintiff:

   a.    with knowledge they were being mistreated, bullied, and put down in class

   b.    with knowledge they were turning inwards and trying to fix themselves and understand

   c.    with knowledge they were not romantically interested at all and wanted to be treated like their peers

   d.    with knowledge of their severe distress and how the situation was affecting their ability to participate in school

   e.    and used their authority as a trusted adult and mental health professional to,

   f.    frame it as a concern that Plaintiff missed the social cue that they were not welcome in the classroom, taking advantage of Plaintiff's attempt to

46

understand and misleading Plaintiff further into low self esteem by insidiously supporting the bullying

g.     actively support the bullying

h.     accuse Plaintiff of "stalking behavior" and warned of serious consequences for not respecting the bullying, framing Plaintiff as a predator

i.     portray their distress and wish to participate as inappropriate

j.     refuse support or engagement with Plaintiff

k.     with no investigation or inquiry into the facts of the situation at hand.

l.     On information and belief, frame Plaintiff's behavior as inappropriate to their parents and other staff, further shaming and isolating them.

Plaintiff believes this conduct (including other conduct described in this complaint) meets the extreme and outrageous standard.

195.     Defendant Valand's conduct was willful and wanton. He stated the situation was "absolutely" distressing Plaintiff and even managed to describe how the situation specifically was harming Plaintiff's ability to focus. He must have known that supporting the students' clearly distressing conduct, framing Plaintiff as a predator, and cutting Plaintiff off from support would almost certainly cause Plaintiff severe emotional distress.

196.     As a direct result of Defendant Valand's actions, Plaintiff experienced suicidal ideation and engaged in reckless, life-endangering behavior, and endured severe emotional and mental distress and anguish for years on end. Plaintiff been since diagnosed with PTSD, and has been unable to engage with their peers or otherwise participate as described in section E (h) and

47

E (i)

## CLAIM XI

## Negligence

## (Against Thomas Valand in their personal capacity)

197.    Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

198.    Defendant Valand, as a social worker working at a public school in his official capacity, had a duty of care to Plaintiff to act reasonably and avoid causing harm.

199.    Defendant Valand took Plaintiff:

a.    with knowledge they were being mistreated, bullied, and put down in class

b.    with knowledge they were turning inwards and trying to fix themselves and understand

c.    with knowledge they were not romantically interested at all and wanted to be treated like their peers

d.    with knowledge of their severe distress and how the situation was affecting their ability to participate in school

e.    and used their authority as a trusted adult and mental health professional to,

f.    frame it as a concern that Plaintiff missed the social cue that they were not welcome in the classroom, taking advantage of Plaintiff's attempt to understand and misleading Plaintiff further into low self esteem by insidiously supporting the bullying

48

g.  actively support the bullying

h.  accuse Plaintiff of "stalking behavior" and warned of serious consequences for not respecting the bullying, framing Plaintiff as a predator

i.  portray their distress and wish to participate as inappropriate

j.  refuse support or engagement with Plaintiff

k.  with no investigation or inquiry into the facts of the situation at hand.

l.  On information and belief, frame Plaintiff's behavior as inappropriate to their parents and other staff, further shaming and isolating them.

Plaintiff believes this conduct (including other conduct described in this complaint) is far beyond what any reasonable person or social worker would do under the circumstances.

200.  There is a national social worker code of ethics maintained by NASW. It can be found at socialworkers.org/About/Ethics/Code-of-Ethics/Code-of-Ethics-English/Social-Workers-Ethical-Responsibilities-to-Clients

201.  By putting other students' wish to bully Plaintiff over Plaintiff's wish to participate in class, Defendant Valand disregarded Plaintiff's right to choose who they want to be (self-determination), breaching the professional standard of conduct (Ethics Code 1.02)

202.  By putting other students' wish to bully Plaintiff over Plaintiff's wish to participate in class, Defendant Valand failed to take action against oppression, inequities, and potential discrimination, breaching the professional standard of conduct (Ethics Code 1.05 (b))

203.  By claiming students did not have to treat Plaintiff fairly in class and informing Plaintiff they could not demand better, Defendant Valand actively reinforced inequities,

49

breaching the professional standard of conduct (Ethics Code 1.05 (b))

204.    Defendant Valand's conduct was willful and wanton. He stated the situation was "absolutely" distressing Plaintiff and even managed to describe how the situation specifically was harming Plaintiff's ability to focus. He must have known that supporting the students' clearly distressing conduct, framing Plaintiff as problematic, and cutting Plaintiff off from support would cause Plaintiff educational disruption, inability to participate in education, and severe mental distress.

205.    As a direct result of Defendant Valand's actions, Plaintiff experienced suicidal ideation and engaged in reckless, life-endangering behavior, and endured severe emotional and mental distress and anguish for years on end. Plaintiff been since diagnosed with PTSD, and has been unable to engage with their peers or otherwise participate as described in section E (h) and E (i)

## CLAIM XII

## Negligence

## (Against Daniel Bloom in their personal capacity)

206.    Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

207.    Defendant Bloom, as a school counselor working at a public school in his official capacity, had a duty of care to Plaintiff to act reasonably and avoid causing harm.

208.    Defendant Bloom was aware of the situation and it's ongoing nature. On information and belief, he had communication with Defendant Valand regarding the situation. On information and belief, Defendant Bloom was aware the situation was causing Plaintiff

emotional distress. Plaintiff had kept Defendant Bloom up to date as to what was happening in class.

209.     Despite all this, Defendant Bloom chose to reinforce respecting Student B's choices, and used the analogy of "the ball is in their court."

210.     There is a national school counselor code of ethics maintained by ASCA. It can be found at schoolcounselor.org/About-School-Counseling/Ethical-Responsibilities/ASCA-Ethical-Standards-for-School-Counselors-(1)

211.     By putting other students' wish to bully Plaintiff over their wish to participate in class and be treated with dignity, Defendant Bloom failed to take action against systemic barriers and bias impeding student development, breaching the professional standard of conduct (Ethics Code A.1.(c))

212.     By putting other students' wish to bully Plaintiff over their wish to participate in class and be treated with dignity, Defendant Bloom failed to take action to establish a school environment where all members of the community demonstrate respect, inclusion, and acceptance, breaching the professional standard of conduct (Ethics Code A.10.(b))

213.     By putting other students' wish to bully Plaintiff over their wish to participate in class and be treated with dignity, Defendant Bloom failed to report the bullying and mental harm to administration as required under district policy, breaching the professional standard of conduct (Ethics Code A.9.(a) and Ethics Code A.11.(d))

214.     By putting other students' wish to avoid accountability over Plaintiff's wish to be treated with dignity, Defendant Bloom failed to facilitate effective communication to promote recovery and healing within the school community, breaching the professional standard of

conduct (Ethics Code A.11.(f))

215.    On information and belief, Defendant Bloom's conduct was willful and wanton. He almost certainly was aware the situation was bothering Plaintiff, and almost certainly was aware of Plaintiff's treatment in class and it's harmful nature. On information and belief, he was aware of how it was impairing Plaintiff's ability to participate in school and life, as evidenced by Defendant Valand's assertions that it was "absolutely" distressing Plaintiff. Therefore, he must have known telling Plaintiff to respect Student B's choice – blindly taking sides – was a potentially harmful and unreasonable course of action.

216.    As a result of Defendant Bloom's negligence, Plaintiff endured severe emotional and mental distress and anguish for years on end. Plaintiff has been diagnosed with PTSD, and has been unable to engage with their peers or otherwise participate as described in section E (h) and E (i)

G.    **REQUEST FOR RELIEF**

Plaintiff requests relief as follows:

1.  Damages in an amount to be determined at trial including, without limitation, lost university costs, therapy costs, diminished academic performance, lost future earnings and opportunities, and ongoing pain and suffering, as well as punitive damages where appropriate, attorneys' fees, and any other relief the Court deems just and proper.

2.  Declaratory relief and other appropriate equitable relief.

3.  Injunctive relief where appropriate, including but not limited to requiring Defendant SSSD to adopt and implement new policies and training procedures to prevent future instances of retaliation, repeated humiliation/degrading behavior, bullying, discrimination, and staff misconduct related to student mistreatment. If a student reports mistreatment at school, there must be a strong and decisive response to investigate and protect the student, not support the bullying to make the student go away. SSSD should publish yearly summaries of its compliance efforts publicly on its website.

4.  Award Plaintiff such other and further relief as the Court deems just, equitable and proper.

**H.      JURY DEMAND**

Plaintiff herein demands a trial by jury of all triable issues in the present matter.


**I.       PLAINTIFF'S SIGNATURE**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.


Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.


/s/ Riley Doe
Riley Doe
rileydoevsssd@gmail.com
Pro Se Plaintiff
Plaintiff proceeding under pseudonym
Real name and address information filed under seal
_____
   (Plaintiff's signature)


11/3/2025
_____
   (Date)