**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-03519-CNS-TPO

RILEY DOE,

Plaintiff,

v.

STEAMBOAT SPRINGS RE-2 SCHOOL DISTRICT,
THOMAS VALAND and
DANIEL BLOOM,

Defendants.

_____

**DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) AND (6)**
_____

**Conferral Certification**

Undersigned counsel certifies that they conferred with Plaintiff, who is pro se, by phone on January 26, 2026 about the defects in the First Amended Complaint and then sent a detailed email summarizing the defects the same day. Plaintiff opposes the relief requested in this motion and has opted not to further amend the complaint.

**Legal Standards for Dismissal Motion**

Defendants bring this motion under Fed. R. Civ. P. 12(b)(1) and (6). A party may challenge a court's subject-matter jurisdiction under Rule 12(b)(1), which may be done "through a facial or factual attack." *Laufer v. Looper*, 22 F.4th 871, 875 (10th Cir. 2022). "A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction. A factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction." *Id.* Ultimately, the plaintiff has "[t]he burden of

establishing subject matter jurisdiction" because they are the party asserting jurisdiction. *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility requires more than a "sheer possibility" that the defendant is liable. *Id.* Although "well-pleaded factual allegations" are entitled to the assumption of truth, conclusory allegations and bare assertions are not. *Id.*

### Relevant Factual Allegations

Plaintiff[1] attended Steamboat Springs High School during the 2021-2022 and 2022-2023 school years. (First Amended Complaint (FAC) ¶¶ 6, 14.) During the 2022-2023 school year, two other students in Plaintiff's French class regularly excluded Plaintiff from their conversations, which was isolating, humiliating, and distressing to Plaintiff. (FAC ¶¶ 14-19, 30.) The other two students "talked warmly, smiled, shared, whispered, and engaged happily with each other" but when Plaintiff tried to join, they were "disregarded or shut down . . . and relegated to watching." (*Id.* ¶ 17.) The two students discussed attending a Taylor Swift concert, and when Plaintiff suggested they could go too, the students declined, telling Plaintiff "no" and "don't ask to be invited." (*Id.* ¶¶ 22, 24, 32.) Plaintiff tried joining a conversation, and one of the other students rebuffed them, saying "you should do your work," while continuing to socialize. (*Id.* ¶ 18.)

---

[1] Plaintiff uses they/them pronouns in their complaint.

Plaintiff "consistently made many attempts" to befriend the two students. (*Id*. ¶¶ 17-20.) Plaintiff tried to "fit in" by being respectful, accommodating, kind, and, apparently because the two other students were girls, more "girly," to no avail. (*Id*. ¶ 20.) Plaintiff tried to address the issues directly with the students, but one "began avoiding Plaintiff" and the other told Plaintiff she was not comfortable with Plaintiff. (*Id*. ¶ 23-26.)

In January 2023, Plaintiff began seeing Tom Valand, the social worker at the high school. (*Id*. ¶¶ 35-37.) Plaintiff and Mr. Valand discussed, over several months, Plaintiff's feelings of distress and isolation over their social interactions with the other students. (*Id*. ¶ 38.) Plaintiff told Mr. Valand they felt unwanted and socially inept and disclosed to Mr. Valand "some awkward things they said" to one of the other students at an event the year prior. (*Id*. ¶¶ 43, 47, 48.) Plaintiff told Mr. Valand that they were not romantically interested in either of the other students but, rather, wanted to be included in the students' friend group. (*Id*. ¶¶ 42, 45-46.) Plaintiff told Mr. Valand the situation had caused them to feel suicidal in the past, though "they did not feel that way at the time." (*Id*. ¶ 49.)

Mr. Valand was compassionate to Plaintiff, acknowledging the distress the situation was causing them. (*Id*. ¶ 50.) Mr. Valand advised Plaintiff that the other students' actions showed they did not want to be Plaintiff's friends, despite "Plaintiff's objections to the contrary," and that Plaintiff was missing this social cue in persistently attempting to befriend them. (*Id*. ¶¶ 51-55.) He noted that Plaintiff's persistence could make the other students uncomfortable, that continuing to pursue a friendship in that way would be inappropriate and potentially perceived as stalking behavior. (*Id*. ¶¶ 56-57.) Plaintiff

viewed Mr. Valand's advice as privileging the other students' feelings over Plaintiff's distress and continued to try and befriend the other students. (*Id*. ¶ 72.)

Plaintiff's guidance counselor, Daniel Bloom, was also "aware of the situation," and advised Plaintiff, like Mr. Valand, that Plaintiff should respect that the other students did not want to be friends and that "the ball was in [the other students'] court" as to whether they wanted to be Plaintiff's friend. (*Id*. ¶¶ 82, 133.)

Plaintiff tried following Mr. Valand and Mr. Bloom's advice for some time, but their "distress toward the situation and students involved intensified," so they resumed pursuing a friendship with the other students. (*Id*. ¶¶ 90-92.) The other students were still not receptive and "began ghosting Plaintiff and giving Plaintiff the side eye." (*Id*. ¶ 92.) Plaintiff informed Mr. Bloom about the other students' actions and Mr. Bloom again emphasized respecting the other students' choices. (*Id*. ¶ 82.)

Plaintiff's family moved to California after the 2022-2023 school year. (*Id*. at 2, ¶ 102.) For "around a year," Plaintiff "tried to suppress [their] feelings of distress" but began to "think through and revisit what happened," because they "continued to experience intrusive thoughts/flashbacks, emotional turmoil, intense shame, and negative thoughts" while trying to make sense of the situation. (*Id*. ¶¶ 103-05, 107.) Sometime after February 2025, Plaintiff was diagnosed with Post Traumatic Stress Disorder (PTSD). (*Id*. ¶ 108.)

## Argument

## I.      Plaintiff has not plausibly alleged a Title IX violation (Claim 1).

Plaintiff alleges that the District violated their rights under Title IX. To establish a Title IX claim based on student-on-student harassment, the plaintiff must show that the

district "(1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school." *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999). Plaintiff fails to plausibly allege any of these elements.

**First**, Plaintiff fails to plausibly allege that District staff were deliberately indifferent to any alleged harassment. Deliberate indifference is a response to harassment that "is clearly unreasonable in light of the known circumstances." *Doe v. Sch. Dist. No. 1, Denver, Colo.*, 970 F.3d 1300, 1314 (10th Cir. 2020) (quotations omitted). This "does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action." *Id.* Indeed, "courts should refrain from second-guessing the [] decisions made by school administrators." *Id.* Plaintiff's allegations, accepted as true, reflect that District staff were trying in earnest, over several months, to advise Plaintiff regarding the social dynamic with the other students. That is not clearly unreasonable.

**Second**, Plaintiff has not plausibly alleged actionable harassment under Title IX. The alleged harassment must be both (1) based on sex and (2) severe, pervasive, and objectively offensive. *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 652 (1999). Plaintiff has not plausibly alleged either form of harassment.

As to type, Plaintiff asserts harassment based on "sex, gender, and presumed sexual orientation," but the well-pleaded allegations do not reflect that this occurred. Plaintiff alleges that two other students excluded them from conversations; that is not sex-

5

based harassment. Plaintiff suggests that they were excluded because they are male, but choosing who is your friend, and who is not, even if based on gender, does not remotely qualify as harassment or bullying, let alone the type of severe, pervasive, and objectively offensive harassment required for such a claim. *Id.* at 652. *See also M.K. by and through Koepp v. Pearl River Cnty. Sch. Dist.*, 144 F.4th 801 (5th Cir. 2025) ("meanspirited" behavior by students toward plaintiff, including calling him gay based on his perceived sexual orientation, is conduct that takes place every day in schools and "does not meet 'the Supreme Court's strenuous standard' for 'severe, pervasive, *and* objectively offensive' conduct"); *Johnson v. Indep. Sch. Dist. No. 47*, 194 F. Supp. 939, 946 (D. Minn. 2002) (teasing and sexually offensive words written in female student's yearbook, while "unfortunate and likely painful," was not severe and pervasive).

Plaintiff also has not plausibly alleged "severe, pervasive, and objectively offensive" harassment. Plaintiff alleges that two female peers chose not to be Plaintiff's friend or include Plaintiff in personal discussions or activities. This may have been upsetting to Plaintiff, but it is not the type of harassment prohibited under Title IX. Indeed, as courts have emphasized, "in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it" because students are still learning how to interact appropriately with their peers. *Davis*, 526 U.S. 651-52. And here, in fact, there was no alleged teasing, shoving, pushing, or gender-specific banter that courts have recognized happens in schools as does not qualify as prohibited sex-based discrimination.

6

**Third**, Plaintiff fails to plausibly allege they were denied benefits of or the ability to participate in any education program. Plaintiff does not allege that they missed any school, classes, or extracurricular activities. Nor does Plaintiff allege that they were unable to finish their high school education. Plaintiff states that their grades and test scores suffered (FAC ¶ 98), but this single conclusory allegation is not enough to plausibly claim a denial of educational benefits. The rest of Plaintiff's allegations assert exclusion from social interactions by the other students. (FAC ¶¶ 22, 99-111.) Social rejection by peers at school is not the denial of educational benefits contemplated under Title IX. *Cox v. South Sanpete Sch. Dist.*, 2019 WL 2297568 (D. Utah May 30, 2019) (dismissing Title IX claim because plaintiff did not allege he was unable to attend school or participate in extracurricular activities, noting that while plaintiff "unquestionably experienced great personal difficulty . . . [t]he difficulties [he] has suffered did not rise to the level of denying [him] access to educational opportunities").

**Finally**, Plaintiff fails to plausibly allege that an "appropriate person" had actual knowledge of any student-on-student harassment. An appropriate person is, at a minimum, a district official with authority to take corrective action to end the claimed discrimination. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). Plaintiff does not plausibly allege that Mr. Valand or Mr. Bloom, a social worker and guidance counselor, were authorized to take remedial action to stop the alleged "harassment." *Ross v. Univ. of Tulsa*, 859 F.3d 1280, 1289-90 (10th Cir. 2017) (campus security officers were not appropriate persons because they could not institute corrective measures); *Plamp v. Mitchell Sch. Dist. No. 17-2*, 565 F.3d 450, 457-58 (8th Cir. 2009) (guidance

counselor and teachers were not appropriate persons); *Warren ex rel. Good v. Reading Sch. Dist.*, 278 F.3d 163 (3rd Cir. 2002) (guidance counsel was not appropriate person); *Wadsworth v. Maine Sch. Admin. Dist.*, 2020 WL 6370725 (D. Me. Oct. 29, 2020) (plaintiff did not sufficiently plead that social worker was appropriate person).

Plaintiff vaguely alleges that they raised "concerns" with Dan Kohler, an assistant principal, and Katy Lee, president of the school board (FAC ¶¶ 81, 83), but these allegations do not plausibly allege that either person was aware of any harassment.

## II.    Plaintiff's constitutional claims against Mr. Valand and Mr. Bloom under 42 U.S.C. § 1983 are barred by qualified immunity (Claims 2-4).

Qualified immunity protects individual defendants from liability for damages unless their conduct was unreasonable under clearly established law. *Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018). Once an individual defendant asserts qualified immunity, it creates a presumption of immunity and the plaintiff must show (1) that the defendant's actions violated a federal constitutional or statutory right, and (2) the right was clearly established at the time of the defendant's unlawful conduct. *Id.; Reavis v. Frost,* 967 F.3d 978, 992 (10th Cir. 2020). "This is a heavy burden" and "[i]f the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity." *Knopf,* 884 F.3d at 944.

A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation, and the precedent must place the statutory or constitutional question beyond debate. *Id.* (quotations omitted). Courts must not define "clearly established law at a high level of generality." *Id.* Instead, "the clearly established law must be 'particularized' to the facts of the case." *Id.* "The dispositive question is whether the

8

violative nature of particular conduct is clearly established." *Id.* "Otherwise, 'plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *Id.*

## A.    Equal Protection (Claim 2).

The equal protection clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This is "a direction that all similarly situated individuals should be treated alike." *City of Cleburne v. Cleburne Living Cntr.*, 473 U.S. 432, 439 (1985). To state a viable equal protection claim, Plaintiff must allege that the District "purposefully discriminat[ed] against [them] because of [their] membership in a particular class." *Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021). Plaintiff must make a "threshold showing that they were treated differently to others who were similarly situated to them" in a different class. *Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011). Then, if the court determines that the District's actions did discriminate based on a protected class, the court must determine whether the discrimination survives "the appropriate level of scrutiny." *Ashaheed,* 7 F.4th at 1250.

Purposeful discrimination may be shown directly or circumstantially. *Id.* Direct proof is evidence that there was a purposeful distinction between groups that is facially apparent from the action itself. *Id.* If, however, the action is facially neutral, a court may still infer purposeful discrimination from the "totality of the relevant facts," including through evidence of disparate impact on a particular group, historical background or specific sequence of events leading to the decision, and "departures from the normal

procedural sequence." *Washington v. Davis*, 426 U.S. 229, 242 (1976). While a plaintiff need not allege that discrimination was the "sole, or even the primary, motivation" behind the decision, they must at least show that "the state actor chose a particular course of action at least in part because of, not merely in spite of, its effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

Plaintiff asserts discrimination based on "gender, sex, perceived sexual orientation, and disability." (FAC ¶ 135.) Plaintiff seems to claim that Mr. Bloom and Mr. Valand treated them differently than the two other students by not taking their concerns about the other students seriously and privileging the other students' feelings. (*Id*. ¶¶ 136-37.) But Plaintiff does not plausibly allege whether or how that alleged treatment purposefully targeted Plaintiff's gender, sex, disability, or sexual orientation. Plaintiff also does not allege any facts that they were similarly situated to other students, as required.[2]

Even if Plaintiff had plausibly alleged that Mr. Valand and Mr. Bloom purposefully treated Plaintiff differently based on a protected class, that treatment would likely survive judicial scrutiny. Claims of sex and gender discrimination are subject to "intermediate scrutiny," which asks whether treatment by sex or gender serves important governmental objectives and is substantially related to achievement of those objectives. *Craig v. Boren*, 429 U.S. 190, 197 (1976). Defendants were justified in advising Plaintiff how to navigate social tension with two other students, including that Plaintiff should not try to force them

---

[2] Though unclear from the FAC, even if Plaintiff is alleging a class-of-one equal protection claim, they would need to plausibly allege they were intentionally treated differently from others similarly situated in all material respects. *SECSYS v. Vigil*, 666 F.3d 678, 688 (10th Cir. 2012). Because they do not, such a claim would fail under Rule 12(b)(6).

to be their friend. Claims of disability and sexual orientation discrimination are subject to rational basis review, an even less stringent scrutiny. *Cleburne*, 473 U.S. at 432. Mr. Valand and Mr. Bloom's advice was rationally related to the interest of schools helping students properly navigate social tensions.

A state actor in Mr. Bloom and Mr. Valand's shoes would not have known that they were violating the Equal Protection Clause by advising Plaintiff as they did. They are therefore entitled to qualified immunity on that claim.

### B.    First Amendment (Claim 3)

For their First Amendment claim, Plaintiff appears to assert that Mr. Valand and Mr. Bloom: (1) "suppressed" Plaintiff's protected speech by advising against pursuing a friendship with the two other students further; and (2) retaliated against Plaintiff by advising that continuing to pursue a friendship with the two students could result in legal trouble. Both individuals are entitled to qualified immunity on this claim.

Regarding Plaintiff's First Amendment "suppression" claim, the government may not restrict or infringe on an individual's free speech rights including by "compelling others to espouse or suppress certain ideas and beliefs." *Phelan v. Laramie Cmty. Coll. Bd. of Tr.*, 235 F.3d 1243, 1247 (10th Cir. 2000). "In order to compel the exercise or suppression of speech, the governmental measure must punish, or threaten to punish, protected speech by governmental action that is 'regulatory, proscriptive, or compulsory in nature.'" *Id.* (quotations omitted). Discouragement that is "minimal" and "wholly subjective" does not impermissibly deter the exercise of free-speech rights. *Id.* at 1247. Plaintiff's allegations that Mr. Valand and Mr. Bloom cautioned that Plaintiff could get in

trouble if they continued their behavior, advised Plaintiff not to discuss the situation further, and told Plaintiff to "respect [the other students'] choices," do not reflect suppressed speech—this is, at most, it is minimal discouragement. *Seamons v. Snow*, 84 F.3d 1226 (10th Cir. 1996) (affirming dismissal of parents' First Amendment claim where "the only conduct of the defendants. . . were discussions (ultimately unsuccessful) to persuade them not to speak out publicly about [an] incident"). Further, Plaintiff's suggestion that Mr. Valand "refused to engage" about the situation, does not allege any suppression of Plaintiff's speech at all.

To state a First Amendment retaliation claim, Plaintiff must plausibly allege that: (1) they were engaged in constitutionally protected speech; (2) Defendants caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that speech; and (3) the adverse action was substantially motivated as a response to Plaintiff's exercise of free speech. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). Plaintiff does not plausibly allege any adverse action. Mr. Valand and Mr. Bloom merely recommended that Plaintiff not continue to pursue a friendship with the other students. Plaintiff claims that Mr. Valand cautioned that their behavior could result in police involvement; but statements concerning the illegality or impropriety of a plaintiff's conduct are insufficient, standing alone, to support a First Amendment retaliation claim. *Weise v. Colo. Springs, Colo.*, 421 F. Supp. 3d 1019, 1042 (D. Colo. 2019). No reasonable person in Mr. Valand or Mr. Bloom's shoes would have known that they were violating Plaintiff's First Amendment rights by providing such basic and logical advice. They are thus entitled to qualified immunity on this claim.

C.      **Substantive Due Process (Claim 4)**

Plaintiff also claims that Mr. Valand violated their substantive due process rights under the Fourteenth Amendment, asserting two theories of liability: (1) that Mr. Valand's conduct "shocks the conscience" and (2) the conduct created a dangerous condition to Plaintiff's health and welfare. Neither theory is plausible.

The 14th Amendment to the U.S. Constitution states in pertinent part that "no state shall deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV § 1. Courts read this provision as containing both "substantive" and "procedural" rights. Substantive due process rights are limited to circumstances where state actors violate some judicially recognized fundamental right (for example, the right to bodily integrity) or engaged in conduct so egregious it can properly be described as "conscience shocking." *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008). "[C]onscious-shocking behavior" is "deliberate government action that is arbitrary and unrestrained by the established principles of private right and distributive justice." *Id.* Mere negligence "does not shock the conscience." *DeAnzona v. City & Cnty. of Denver*, 222 F.3d 1229, 1236 (10th Cir. 2000). "Rather, a plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Ruiz v. McDonnell*, 299 F.3d 1173, 1184 (10th Cir. 2002).

Plaintiff has not plausibly alleged such outrageous and unrestrained behavior. The fact that Plaintiff disagreed with Mr. Valand's counseling advice does not plausibly allege negligence, much less conscious-shocking conduct. *Doe v. Woodward*, 912 F.3d 1278, 1301 (10th Cir. 2019) (To be conscience-shocking, the complained of behavior must be

13

so "arbitrary" to be "as an instrument of oppression," "egregious," "outrageous," and "so brutal and offensive" that it runs afoul of "traditional ideas of fair play and decency").

Nor does Plaintiff plausibly allege a substantive due process claim under a "danger creation" theory. Such a claim exists when the state has, through its actions or inactions, put the plaintiff in immediate, serious, and proximate harm and recklessly disregarded that harm. *Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 917, 921 (10th Cir. 2012). Courts also require that the action or inaction be truly conscience shocking, *id.*, so this theory largely turns on proving the first theory, too. This is a "demanding" standard. *Id.* at 923. Plaintiff has not plausibly alleged conscience shocking behavior, or that they were placed in a dangerous situation. No reasonable person in Mr. Valand's position would have known they were violating Plaintiff's substantive due process rights. Mr. Valand is entitled to qualified immunity on this claim.

## III.    Plaintiff has not plausibly alleged municipal liability (Claims 5-7).

Municipal entities are not liable under Section 1983 merely because an employee violates a plaintiff's federal rights. *Jenkins v. Woods*, 81 F.3d 988, 993 (10th Cir. 1996). Municipal liability is "limited to acts that are, properly speaking, acts of the municipality— that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-480 (1986). Thus, a plaintiff suing a municipal entity must prove: (1) an employee committed a constitutional violation and (2) that violation was caused by an official policy or practice or by an official policymaker. *Murphy v. City of Tulsa*, 950 F.3d 641, 649 (10th Cir. 2019).

14

As noted in Argument § II, *supra*, Plaintiff fails to plausibly allege a constitutional violation. This alone warrants dismissal of these claims. But Plaintiff otherwise has not alleged facts, even accepted as true, that satisfy the second element of municipal liability.

Plaintiff asserts three theories of municipal liability (FAC ¶¶ 154-174), each of which are addressed below.

**Custom, Policy, or Practice.** A challenged practice may be deemed an official policy or custom if it is a formally promulgated policy or a well-settled custom or practice. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013). Plaintiff does not identify a written policy to support this claim. Rather, they contend that the District had widespread customs of (1) "viewing girls/female's discomfort as more important and valid than violations of others'/disabled persons' rights and visible distress" and (2) "responding to incidents of relational bullying by advising students to 'find other friends' and avoid the bullying, rather than intervening or enforcing anti-bullying policies." (FAC ¶¶158, 162.) But these conclusory assertions of custom do not "clear the Rule 12(b)(6) bar." *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1214 (D.N.M. 2015). Plaintiff fails to allege facts plausibly inferring that either alleged custom existed, let alone was well-settled. This claim is not plausible and should be dismissed.

**Ratification.** Ratification occurs when an official policymaker of the municipal entity approves the actions of the employees who committed the underlying violation. *See Coffee v. City of Okla. City, Okla.*, 2009 WL 10669175, at *5 n.11 (W.D. Okla. Aug. 4, 2009). Plaintiff vaguely asserts that "the District" knew about Mr. Valand's advice to Plaintiff and was deliberately indifferent to it. (FAC ¶ 167.) Plaintiff vaguely alleges that

15

he spoke to Board President Katy Lee about his "concerns," but he does not allege that
Ms. Lee was aware of or approved Mr. Valand's counseling advice. (FAC ¶ 81.) Plaintiff
alleges that he raised "concerns" with AP Kohler about how he was "being treated in class
and broadly at the school," but he admits that Mr. Kohler provided support and referred
him to Mr. Valand for guidance. (*Id.* ¶ 83.) He does not allege that Mr. Kohler knew of or
approved Mr. Valand's subsequent advice.

**Failure to Train.** Municipal liability "may be based on injuries caused by a failure
to adequately train or supervise employees, so long as that failure results from deliberate
indifference to the injuries that may be caused." *Brammer-Hoelter v. Twin Peaks Charter
Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010) (quotations omitted). "Deliberate indifference
is a stringent standard of fault," requiring proof that a final policymaker "disregarded a
known or obvious consequence of his action." *Waller v. City & Cnty. of Denver*, 932 F.3d
1277, 1284 (10th Cir. 2019) (quotations omitted). In the school context, a final
policymaker is generally the Board of Education or the Superintendent. *Milligan-Hitt v.
Bd. of Trs. of Sheridan Cnty. Sch. Dist. No. 2*, 523 F.3d 1219, 1228 (10th Cir. 2008). "The
deliberate indifference standard may be satisfied when the municipality has actual or
constructive notice that its action or failure to act is substantially certain to result in a
constitutional violation, and it consciously or deliberately chooses to disregard the risk of
harm." *Barney*, 143 F.3d at 1307. When styled as a failure-to-train or supervise claim, "[a]
pattern of similar constitutional violations by untrained employees is ordinarily necessary'"
to satisfy the deliberate indifference standard. *Connick v. Thompson*, 563 U.S. 51, 62
(2011) (quotations omitted). Allegations of unrelated and varied conduct cannot satisfy

16

the "stringent" deliberate indifference standard. *Waller,* 932 F.3d at 1284. Plaintiff does not allege a pattern of similar, repeated constitutional violations by untrained employees. Again, Plaintiff does not even allege that a final policymaker was aware of Plaintiff's issue with the other two students or Mr. Valand's advice regarding the situation.

The Court should dismiss claims five, six, and seven.

## IV.     Plaintiff has not plausibly alleged disability discrimination (Claim 8).

Plaintiff alleges disability discrimination against the District under Section 504 of the Rehabilitation Act, the Americans with Disabilities Act (ADA), and the disability provisions of Colorado's Anti-Discrimination Act (CADA).

Section 504 and the ADA are intended to ensure that "otherwise qualified [disabled] individuals [are] provided with meaningful access to the benefits" granted by a covered entity. *Havens v. Colo. Dep't of Corr.*, 897 F.3d 1250, 1263 (10th Cir. 2018). They "seek to ensure evenhanded treatment and the opportunity for [disabled] individuals to participate in and benefit from programs receiving federal financial assistance." *Id.* They do not, however, "guarantee the [disabled] equal results from participation in such programs and services." *Id.*

Section 504 and ADA claims involve the same substantive standards and are analyzed together. *Miller ex rel. S.M. v. Bd. Of Educ. Of Albuquerque Pub. Schs.*, 565 F.3d 1232, 1245 (10th Cir. 2009). CADA provides that courts review claims alleging disability discrimination under that law under "the same standards and defenses that are available under the [ADA] and its related amendments and implementing regulations." C.R.S. § 24-34-802. Thus, the ADA, § 504, and CADA claims rise and fall together.

17

To establish these claims, Plaintiff must show: (1) they are an individual with a disability, (2) the District is a "public entity" (ADA) and a federally funded "program or activity" (Section 504), and (3) the District discriminated against them (4) based on their disability. *Id.*; *Fry v. Napoleon Comm. Schs.*, 580 U.S. 154, 160-61 (2017). A "disability" is "a physical or mental impairment that substantially limits a major life activity." *Ellenberg v. N.M. Military Inst.*, 572 F.3d 815, 819, 824 (10th Cir. 2009). Plaintiff alleges three theories of disability discrimination: intentional discrimination, retaliation, and failure to accommodate. None are plausible.

**Intentional Discrimination.** Intentional discrimination can be inferred from "deliberate indifference to the strong likelihood that pursuit of [] questioned policies will likely result in a violation of federally protected rights." *J.V. v. Albuquerque Pub. Schs.*, 813 F.3d 1289, 1298 (10th Cir. 2016). Deliberate indifference is a demanding standard that requires both knowledge that harm to a federally protected right is substantially likely and a failure to act upon that likelihood. *Id.* The "failure to act" must be "more than negligent and involve an element of deliberateness." *Id.*

Plaintiff has not plausibly alleged that Mr. Valand or Mr. Bloom intentionally treated them differently based on a disability or disregarded a strong likelihood that Plaintiff's rights would be violated. The fact that Mr. Valand and Mr. Bloom gave Plaintiff advice about social dynamics that Plaintiff did not like does not plausibly allege deliberate indifference to a disability. Further, while Plaintiff alleges that staff "perceived" them as having a communication disorder and that they were diagnosed with PTSD <u>after</u> they left

18

the school, Plaintiff does not allege that they actually needed supports for any communication disorder or PTSD.

**Retaliation.** To state a prima facie claim for disability-related retaliation, Plaintiff must allege that: (1) they engaged in protected activity; (2) they suffered a materially adverse action by the District either after or contemporaneously with their protected activity; and (3) there is a causal connection between the protected activity and the adverse action. *Reinhardt v. Albuquerque Pub. Schs. Bd. of Educ.*, 595 F.3d 1126, 1131-32 (10th Cir. 2010). If Plaintiff can prove these elements, then the burden shifts to the District to prove that it had a non-discriminatory basis for its action. *Id.* If the District makes this showing, then the burden shifts back to Plaintiff to prove that our proffered non-discriminatory basis was pretext. *Id.*

Plaintiff has not plausibly alleged that they engaged in any protected activity. For instance, Plaintiff did not request accommodations or complain that they had not received any. Second, Plaintiff has not plausibly alleged an adverse action. Receiving counseling advice that you do not like is not an adverse action. Thus, Plaintiff likely cannot plausibly allege a prima facie case. And even if Plaintiff could, Mr. Valand and Mr. Bloom had a non-discriminatory basis for advising Plaintiff as they did evident in the allegations themselves—to help a student navigate social dynamics with their peers.

**Failure to Accommodate.** Plaintiff's failure-to-accommodate claim is time-barred. Section 504 and the ADA do not include statutes of limitation. *Chavez-Bravo v. Brighton Sch. Dist. 27J*, 775 F. Supp. 3d 1142, 1150 (D. Colo. 2025). As a result, federal courts apply the relevant state limitations period for similar claims. *Id.* Courts have applied

Colorado's general two-year limitation period to ADA and § 504 claims. *Id.* at 1151. When a federal statute borrows a State's limitations period, the State's tolling rules are ordinarily borrowed also. *Id.* So, Colorado's tolling statute that generally allows minors to wait until they are 18 until the limitations period begins to run also typically applies. *Id.* However, federal courts will not apply state tolling provisions if doing so would defeat the goals of the federal statute at issue. *Id.* Section 504 and the ADA, in the education context, exist to provide prompt resolution to students in need of supports in school. *Id.* at 1151-52. Plaintiff waited more than two years to file their disability discrimination claims, years after they left the District, which by then had no ability to address Plaintiff's concerns. Thus, tolling these claims would be contrary to the remedial purpose of § 504 and the ADA, and the Court should dismiss this claim as time-barred.

The claim is also not plausible. If the District knew that Plaintiff was disabled and "require[d] an accommodation of some kind [for them to] participate in or receive the benefits of its services," it would have needed to provide Plaintiff with reasonable accommodations to ensure meaningful access to the District's programs. *J.V. v. Albuquerque Pub. Schs.*, 813 F3d 1289, 1299 (10th Cir. 2016). The District would have been "on notice" that Plaintiff needed an accommodation when it knew that Plaintiff required one, "either because the need [was] obvious or because [Plaintiff] request[ed] an accommodation." *Id.* If accommodations were warranted, Plaintiff would be entitled to "reasonable" accommodations, not their preferred accommodations. *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1263 (10th Cir. 2001); *Nunes v. Mass. Dep't of Corr.*, 766 F.3d 136, 146 (1st Cir. 2014).

Plaintiff does not allege that Defendants knew they had a disability and admits they were not diagnosed with PTSD until long after they left the District. Further, Plaintiff does not allege that they requested accommodations or were denied accommodations provided for in an Individualized Education Plan, 504 Plan, or similar. Nor do they plausibly allege that the need for accommodation was obvious yet ignored—rather, the allegations demonstrate that Plaintiff was experiencing a challenging social dynamic, a commonplace issue in high schools, and the District responded by providing support from Mr. Valand and Mr. Bloom. Plaintiff may not appreciate their advice, but that sentiment alone does not plausibly allege a failure to reasonably accommodate a disability.

## V.    Plaintiff's state-law claims should be dismissed.[3]

### A.    Plaintiff's CADA claim (Claim 9) is not plausible.

Plaintiff asserts a CADA claim, alleging discrimination based on "disability, sex, sexual orientation, gender identity, and/or gender expression." (FAC ¶ 199.) This claim mirrors the federal claims of sex and disability discrimination, neither of which are plausible. Thus, it should be dismissed for that reason. But Plaintiff has otherwise not plausibly alleged a basis for relief under CADA.

Under CADA, it is unlawful "directly or indirectly, to refuse, withhold from, or deny to an individual or a group, because . . . sex, sexual orientation, [or] gender identity the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation." C.R.S. § 24-34-601(2)(a). With

---

[3] If the Court dismisses Plaintiff's federal claims, it should decline to exercise supplemental jurisdiction over Plaintiff's state law claims and they should be dismissed. *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011).

alleged sex discrimination, a plaintiff must prove that "but for" their membership in an enumerated class, they would not have been denied the full privileges of a place of public accommodation. *Craig v. Masterpiece Cakeshop, Inc.*, 370 P.3d 272, 280 (Colo. App. 2015) (reversed on other grounds in 584 U.S. 617 (2018)).

Plaintiff cannot show that but-for their male gender, they would have been treated differently by the District. Mr. Valand and Mr. Bloom's actions in response to Plaintiff's complaints about their social situation were not gendered; rather, Mr. Valand and Mr. Bloom provided sound, gender-neutral advice for a student experiencing social difficulties with peers. Additionally, as noted, there is no non-conclusory allegation that Plaintiff was deprived of the full privileges offered by the District. The Complaint does not plausibly allege facts of "but for" causation or denial of any public accommodation and the Court should dismiss Plaintiff's sex- and gender-based CADA claim on these bases.

**B.     The Court lacks subject matter jurisdiction over Plaintiff's state tort claims (Claims 10-13).**

Plaintiff's tort claims of outrageous conduct, negligence, and failure to report child abuse are barred by the Colorado Governmental Immunity Act (CGIA).[4]

Under the CGIA, public entities and public employees have immunity for actions that lie in tort or that could lie in tort unless a specific waiver of immunity applies. C.R.S. § 24-10-101 *et seq.* Whether immunity exists under the CGIA is a question of subject

---

[4] Courts have recognized each claim as a tort. *Maestas v. Lujan*, 351 F.3d 1001, 1015 (10th Cir. 2003) (outrageous conduct); *Springer v. City and Cnty. of Denver*, 13 P.3d 794, 801 (Colo. 2000) (negligence); *L.J. v. Carricato*, 413 P.3d 1280, 1284-85 (Colo. App. 2018) (failure to report child abuse claim lies or could lie in tort).

matter jurisdiction reviewed under Fed. R. Civ. P. 12(b)(1). *Jackson v. Beston*, 2025 WL 2320372, *6 (D. Colo. Aug. 11, 2025).

**Time-Barred**. A jurisdictional requirement for asserting tort claims against public entities or employees is that one must provide a "notice of claim" within 182 days "after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury." C.R.S. § 24-10-109(1). Plaintiff did not meet this threshold requirement. Plaintiff alleges wrongdoing during the 2022-2023 school year only, yet did not provide the District with a notice of claim until July 8, 2025 (**Ex. A**)—well beyond the 182-day deadline.

Plaintiff suggests, unconvincingly, that they did not "discover" their injuries until February 2025. "Discovery" is when "plaintiff knew or, through the exercise of reasonable diligence, should have known (or, alternatively, discovered or should have discovered), the wrongful act." *Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo. 1993). Plaintiff's suggestion is belied by Plaintiff's own allegations that, right after they left the District, they tried to suppress their recollection of the events, tried to cope in silence, and feared sharing what happened. (FAC ¶¶ 103-04.)

**Willful and Wanton**. Plaintiff also fails to plausibly allege "willful and wanton" conduct, which is required to establish a waiver of Mr. Valand and Mr. Bloom's immunity under the CGIA. C.R.S. § 24-10-118(2)(a). Willful and wanton conduct is conduct "wholly disregardful of the rights, feelings, and safety of others . . . at times even imply[ing] an element of evil;" and "purposefully committed, which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to [the] consequences, or of

23

the rights and safety of others, particularly the plaintiff." *Martinez v. Est. of Bleck*, 379 P.3d 315, 323 (Colo. 2016) (quotation omitted). Mr. Valand and Mr. Bloom's alleged conduct does not come close to hitting this extremely high bar.

### C. Plaintiff's tort claims otherwise are not plausible on their face.

**Outrageous Conduct.** The elements of outrageous conduct are that: (1) the defendant engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress. *Culpepper v. Pearl Street Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994). Whether conduct is outrageous is a threshold issue that courts decide as a matter of law. *Green v. Qwest Corp.*, 155 P.3d 383 (Colo. App. 2006). Outrageous conduct is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Culpepper*, 877 P.2d at 882. This is a very high bar. *E.g., Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665-66 (Colo. 1999). The core of Plaintiff's allegations is that over several meetings Mr. Valand minimized their apparent distress arising from a challenging social dynamic. (FAC ¶¶ 56-87, 69-70.) This is not outrageous conduct.

**Negligence.** To prove a claim of negligence, a claimant must show: (1) the defendant owed a legal duty of care, (2) the defendant breached that duty, (3) the plaintiff was injured, and (4) the defendant's breach caused that injury. *Lopez v. Trujillo*, 399 P.3d 750, 753 (Colo. App. 2016). Generally, simple negligence cannot provide the basis for the recovery of damages for mental or emotional suffering, unless such negligence has resulted either in physical injury or in the creation of a reasonable risk of bodily harm.

24

*Williams v. Cont'l Airlines, Inc.,* 943 P.2d 10, 16 (Colo. App. 1996). It is only if the conduct can be determined to be willful or wanton that the recovery of such damages is otherwise authorized. *Id.* Alternatively, on a claim of negligent infliction of emotional distress, the plaintiff must show they sustained physical injury or was in the 'zone of danger.'" *Card v. Blakeslee*, 937 P.2d 846, 849 (Colo. App. 1996). Colorado courts have not carved out an exception to this requirement for claims of negligent infliction of emotional distress allegedly caused by mental health professionals. *Id.* Plaintiff does not plausibly allege that either Mr. Valand or Mr. Bloom's conduct was willful and wanton, as explained above. Nor does Plaintiff allege that they were placed in a zone of danger or experienced physical injury. Plaintiff's allegations do not plausibly state a claim of negligence.

**Failure to Report.** A mandatory reporter "who has reasonable cause to know or suspect that a child has been subjected to abuse or neglect" must immediately report it. C.R.S. § 19-3-304(1)(a). Child abuse is "an act or omission . . . that threatens the health or welfare of the child" and includes "emotional abuse," which the statute further defines as "an identifiable and substantial impairment of the child's intellectual or psychological functioning or development or a substantial risk of impairment of the child's intellectual or psychological functioning or development." C.R.S. § 19-1-103(1)(a).

Plaintiff does not plausibly allege they suffered child abuse. Plaintiff's allegations reflect that Plaintiff was repeatedly rebuffed by two peers who did not want to be his friend or involve him in their conversations. That is not child abuse. Plaintiff also fails to plausibly allege that Mr. Valand or Mr. Bloom knew their health or welfare was substantially impaired by the other students' conduct. Plaintiff alleges that Mr. Valand and Mr. Bloom

25

knew Plaintiff was "distressed" by this dynamic, but that is a far cry from having reason to know that Plaintiff's health and welfare was substantially impaired. Plaintiff's claim is not plausible and should be dismissed.

**Attorney Fees**. If the Court dismisses Plaintiff's tort claims, Defendants are entitled to an award of reasonable attorney fees under C.R.S. § 13-17-201.

**Conclusion**

The Court should dismiss Plaintiff's claims under Rule 12(b)(1) and 12(b)(6).

Respectfully submitted this 9th day of February 2026.

> *s/Elliott V. Hood*
> Elliott V. Hood
> Zoe Verhoeven
> CAPLAN AND EARNEST LLC
> 3107 Iris Avenue, Suite 100
> Boulder, Colorado 80301
> 303-443-8010
> ehood@celaw.com
> zverhoeven@celaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 9, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and emailed to the following:

Riley Doe
rileydoevsssd@gmail.com
*Pro Se Plaintiff*

> *s/Shelley McKinstry*
> Shelley McKinstry, Paralegal

26
