IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  25-cv-03519-CNS-TPO

RILEY DOE,

Plaintiff,

v.

STEAMBOAT SPRINGS RE-2 SCHOOL DISTRICT,
THOMAS VALAND and
DANIEL BLOOM,

Defendants.

_____

**DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT UNDER
FED. R. CIV. P. 12(b)(1) AND (6)**

_____

Plaintiff alleges that they[1] wanted to be friends and engage socially with two female classmates, but that those classmates did not reciprocate and, at times, excluded Plaintiff from conversations and social gatherings. Plaintiff persisted in attempting to engage socially with those students. Plaintiff, who was born male, even tried to "conform to traditional feminine stereotypes," acting "more girly," toward the classmates, but to no avail. Plaintiff met with Defendant Tom Valand, a school social worker, and Defendant Daniel Bloom, a school counselor, who advised Plaintiff on navigating this social dynamic. Both Defendants encouraged Plaintiff to respect the other students' personal boundaries and choices, and Mr. Valand noted that Plaintiff's persistence with the students might be

_____

[1] Plaintiff uses they/them pronouns in their complaint, so we use them here.

viewed as unwelcome advances and that Plaintiff was missing the "social cue" that the other students did not want to be Plaintiff's friends.

Plaintiff claims that this advice from Mr. Bloom and Mr. Valand constitutes discrimination and tortious conduct, but Plaintiff has not plausibly alleged a violation of any federal or state law. Plaintiff also failed to provide Defendants with a timely notice of claim, nor does Plaintiff allege facts constituting the type of willful or wanton conduct, necessary to waive Defendants' immunity under the Colorado Governmental Immunity Act. The Court should dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) and can separately dismiss the tort claims under Rule 12(b)(1).

## Conferral Certification

Undersigned counsel conferred with Plaintiff, who is pro se, by email on April 9 about the defects in the Second Amended Complaint, as they did with the original and the First Amended Complaint. Plaintiff has opted not to further amend the complaint.[2]

## Legal Standards for Dismissal Motion

Defendants bring this motion under Fed. R. Civ. P. 12(b)(1) and (6). A party may challenge a court's subject-matter jurisdiction under Rule 12(b)(1), which may be done "through a facial or factual attack." *Laufer v. Looper*, 22 F.4th 871, 875 (10th Cir. 2022). "A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction. A factual attack goes beyond the allegations in the complaint and

---

[2] By agreement, Plaintiff was allowed to amend the complaint twice as of right, which Plaintiff has now exhausted. Thus, if Plaintiff desires to try and amend the complaint after this dismissal motion is filed, as Plaintiff did with the prior dismissal motion, Plaintiff would need to seek leave to amend under Rule 15, and Defendants would oppose that motion.

adduces evidence to contest jurisdiction." *Id.* Ultimately, the plaintiff has "[t]he burden of establishing subject matter jurisdiction" because they are the party asserting jurisdiction. *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility requires more than a "sheer possibility" that the defendant is liable. *Id.* Although "well-pleaded factual allegations" are entitled to the assumption of truth, conclusory allegations and bare assertions are not. *Id.*

**Relevant Factual Allegations**

Plaintiff attended Steamboat Springs High School during the 2021-2022 and 2022-2023 school years. (Sec. Am. Compl. (SAC) ¶¶ 6, 14.) During the 2022-2023 school year, Plaintiff tried to converse with and befriend two female students, Students A and B, but those students did not reciprocate. (*Id*. ¶¶ 32-34, 42-43, 46-50, 55-63.) Students A and B befriended, talked with, and engaged in social activities with other students but did not involve Plaintiff. (*Id*.) Plaintiff sometimes felt that Students A and B were excluding Plaintiff because they wanted "girl time." (*Id*. ¶ 52.) Nonetheless, Plaintiff persisted in attempting to engage socially with Students A and B, but without success. (*Id*. ¶¶ 55-63.) Plaintiff even "made many attempts" to "conform to traditional feminine stereotypes," like being "more girly," toward Students A and B, but to no avail. (*Id*. ¶ 45.) Plaintiff found this

exclusion to be isolating, humiliating, and distressing. (*Id*. ¶ 28.) Plaintiff felt that this exclusion "removed" Plaintiff from the "classroom environment." (E.g., *id*. ¶¶ 46, 52, 268.)

Plaintiff met "many times" with Defendants Valand and Bloom to discuss their concerns related to Students A and B, and Bloom and Valand attempted to advise Plaintiff regarding those concerns. (*Id*. ¶¶ 28, 84-91, 100.) Mr. Bloom told Plaintiff that Plaintiff should "respect" Student A and B's choice not to be Plaintiff's friend. (*Id*. ¶ 100.) Mr. Valand advised Plaintiff that, because Plaintiff is a "larger male" and Students A and B are "females," Plaintiff's persistence with Students A and B might be viewed as unwelcome advances, even "stalking" or "predatory" behavior, and that Plaintiff was missing the "social cue" that Students A and B did not want to be friends. (*Id*. ¶¶ 44, 87, 91, 123, 127.)

Plaintiff's family moved out of state after Plaintiff's junior year of high school. (*Id*. ¶ 181.) Nearly two years later, in February 2025, Plaintiff was diagnosed with Post-Traumatic Stress Disorder (PTSD). (*Id*. ¶¶ 190-91.) Plaintiff enrolled in "university" but has since withdrawn and blames the District for this interruption in their education. (*Id*. ¶ 192.) Plaintiff has "flashbacks" of the "situation" to this day. (*Id*. ¶ 194.)

## Argument[3]

### I.     Plaintiff has not plausibly alleged a Title IX violation (Claim 1).

Plaintiff claims that the District violated their rights under Title IX through deliberate indifference to peer harassment, retaliation, and by intentional discrimination.

---

[3] Plaintiff has withdrawn claims 4-7 and 9 so Defendants do not address them.

### A.    Deliberate Indifference.

To establish a Title IX claim based on student-on-student harassment, the plaintiff must show that the district "(1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school." *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999). Plaintiff fails to plausibly allege any of these elements.

**First**, Plaintiff fails to plausibly allege that District staff were deliberately indifferent to any alleged harassment. Deliberate indifference is a response to harassment that "is clearly unreasonable in light of the known circumstances." *Doe v. Sch. Dist. No. 1, Denver, Colo.*, 970 F.3d 1300, 1314 (10th Cir. 2020) (quotations omitted). This "does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action." *Id.* Indeed, "courts should refrain from second-guessing the [] decisions made by school administrators." *Id.* Plaintiff's allegations, accepted as true, reflect that District staff were trying in earnest, over several months, to advise Plaintiff regarding the social dynamic with the other students. That is not clearly unreasonable.

**Second**, Plaintiff has not plausibly alleged actionable harassment under Title IX. The alleged harassment must be both (1) based on sex and (2) severe, pervasive, and objectively offensive. *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 652 (1999). Plaintiff has not plausibly alleged either form of harassment.

The complaint falls well short of plausibly alleging "severe, pervasive, and objectively offensive" harassment, or even harassment generally. Plaintiff alleges that two peers chose not to be Plaintiff's friend and excluded Plaintiff from personal discussions or activities. This may have been upsetting to Plaintiff, but it is not the type of peer "harassment" prohibited under Title IX. As courts have emphasized, "in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it" because students are still learning how to interact appropriately with their peers. *Davis*, 526 U.S. 651-52. And here, in fact, there was no alleged teasing, shoving, pushing, or gender-specific banter that courts have recognized happens in schools and does not qualify as prohibited discrimination.

As to type, Plaintiff asserts harassment based on "sex, gender, and presumed sexual orientation," but it is not clear from the complaint—despite multiple conferrals on this exact issue—how the District discriminated based on that type or class, or whether Plaintiff presented or identified as a certain sex, gender, or sexual orientation when Plaintiff was enrolled in the District. Defendants and this Court should not be forced to make Plaintiff's arguments for them. *Whitney v. State of N.M.*, 113 F.3d 1170, 1173-74 (10th Cir.1997) (declining to "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf").  Plaintiff suggests that they were excluded because Plaintiff was perceived as male, but choosing who is your friend, and who is not, even if based on gender, does not remotely qualify as harassment or bullying, let alone the type of severe, pervasive, and objectively offensive harassment required for such a claim. *Id.* at 652. *See also M.K. by and through Koepp v. Pearl River*

6

*Cnty. Sch. Dist.*, 144 F.4th 801 (5th Cir. 2025) ("meanspirited" behavior by students toward plaintiff, including calling him gay based on his perceived sexual orientation, is conduct that takes place every day in schools and "does not meet 'the Supreme Court's strenuous standard' for 'severe, pervasive, *and* objectively offensive' conduct"); *Johnson v. Indep. Sch. Dist. No. 47*, 194 F. Supp. 939, 946 (D. Minn. 2002) (teasing and sexually offensive words written in female student's yearbook, while "unfortunate and likely painful," was not severe and pervasive).

**Third**, Plaintiff fails to plausibly allege they were denied benefits of or the ability to participate in any education program. Plaintiff frames the alleged social exclusion as a "removal" from class, but Plaintiff was not removed from class or denied the benefits of the District's programs or activities. Social rejection by peers at school is not the denial of educational benefits contemplated under Title IX. *Cox v. South Sanpete Sch. Dist.*, 2019 WL 2297568 (D. Utah May 30, 2019) (dismissing Title IX claim because plaintiff did not allege he was unable to attend school or participate in extracurricular activities, noting that while plaintiff "unquestionably experienced great personal difficulty . . . [t]he difficulties [he] has suffered did not rise to the level of denying [him] access to educational opportunities"). Plaintiff otherwise does not allege missing any school, classes, or extracurricular activities. Plaintiff alleges that Plaintiff was "unable to focus" during their AP French exam because Plaintiff observed Students A and B "engaging amicably" and not including Plaintiff, and that Plaintiff's AP French score dropped from a 4 to a 3 as a result. (*Id*. ¶ 177-78.) This lower score is not plausibly tied to any action by the District;

7

even if it was, earning a point fewer on an AP exam is hardly the denial of participation in or benefits of school programming.

**Finally**, Plaintiff fails to plausibly allege that an "appropriate person" had actual knowledge of any student-on-student harassment. An appropriate person is, at a minimum, a district official with authority to take corrective action to end the claimed discrimination. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). Plaintiff does not plausibly allege that Mr. Valand or Mr. Bloom, a social worker and guidance counselor, were authorized to take remedial action to stop the alleged "harassment." *Ross v. Univ. of Tulsa*, 859 F.3d 1280, 1289-90 (10th Cir. 2017) (campus security officers were not appropriate persons because they could not institute corrective measures); *Plamp v. Mitchell Sch. Dist. No. 17-2*, 565 F.3d 450, 457-58 (8th Cir. 2009) (guidance counselor and teachers were not appropriate persons); *Warren ex rel. Good v. Reading Sch. Dist.*, 278 F.3d 163 (3rd Cir. 2002) (guidance counsel was not appropriate person); *Wadsworth v. Maine Sch. Admin. Dist.*, 2020 WL 6370725 (D. Me. Oct. 29, 2020) (plaintiff did not sufficiently plead that social worker was appropriate person).

Plaintiff vaguely alleges that they raised "concerns" with Dan Kohler, an assistant principal, and Katy Lee, president of the school board (SAC ¶¶ 152-53 ), but these allegations do not plausibly allege that either person was aware of any harassment.

### B.    Retaliation.

To state a claim for retaliation under Title IX, a plaintiff must allege that: (1) they engaged in protected activity; (2) defendant had knowledge of the protected activity; (3) materially adverse school-related action was taken against plaintiff; and (4) there was a

causal connection between the protected activity and the adverse action. *Tackett v. Univ. of Kan.*, 234 F. Supp. 3d 1100, 1109 (D. Kan. 2017). Plaintiff must allege that the District "retaliated against [them] *because* [they] complained of sex discrimination." *Doe v. Rocky Mtn, Class. Acad.*, 99 F.4th 1256, 1262 (10th Cir. 2024) (emphasis in original).

Plaintiff does not plausibly allege facts, even accepted as true, supporting the necessary elements of this claim. Plaintiff seemingly bases this claim on the allegation that Mr. Valand told Plaintiff that Plaintiff's persistence with Students A and B could be perceived as unwelcome and even stalking or predatory behavior. (*Id*. ¶¶ 210-11.) Mr. Valand's alleged response does not qualify as a materially adverse school-related action. Plaintiff also does not plausibly allege that Mr. Valand's advice was given because Plaintiff was complaining of sex-based discrimination. The only reasonable inference is that Mr. Valand was attempting to advise a student on managing a social challenge, not as a means of "retaliating" against Plaintiff for raising the concern.

### C.    Intentional Discrimination.

The other assertion under Title IX is that the District, through Mr. Valand, purposefully denied Plaintiff the benefits and privileges of school programs and opportunities based on sex. The complaint does not plausibly allege recovery under this theory. As mentioned, Mr. Valand is not an appropriate person that can act on the District's behalf, nor was Plaintiff denied access to the school's programing. There is also no plausible allegation that Mr. Valand intentionally denied Plaintiff that access; even accepting the well-pleaded allegations as true, Mr. Valand was simply advising Plaintiff on navigating a social challenge. That does not qualify as sex-based discrimination.

II.    **Plaintiff's constitutional claims against Mr. Valand and Mr. Bloom under 42 U.S.C. § 1983 are barred by qualified immunity (Claims 2-3).**

Qualified immunity protects individual defendants from liability for damages unless their conduct was unreasonable under clearly established law. *Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018). Once an individual defendant asserts qualified immunity, it creates a presumption of immunity and the plaintiff must show (1) that the defendant's actions violated a federal constitutional or statutory right, and (2) the right was clearly established at the time of the defendant's unlawful conduct. *Id.; Reavis v. Frost,* 967 F.3d 978, 992 (10th Cir. 2020). "This is a heavy burden" and "[i]f the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity." *Knopf,* 884 F.3d at 944.

A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation, and the precedent must place the statutory or constitutional question beyond debate. *Id.* (quotations omitted). Courts must not define "clearly established law at a high level of generality." *Id.* Instead, "the clearly established law must be 'particularized' to the facts of the case." *Id.* "The dispositive question is whether the violative nature of particular conduct is clearly established." *Id.* "Otherwise, 'plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *Id.*

A.    **Equal Protection (Claim 2).**

The equal protection clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This is "a direction that all similarly situated individuals should

10

be treated alike." *City of Cleburne v. Cleburne Living Cntr.*, 473 U.S. 432, 439 (1985). To state a viable equal protection claim, Plaintiff must allege that the District "purposefully discriminat[ed] against [them] because of [their] membership in a particular class." *Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021). Plaintiff must make a "threshold showing that they were treated differently to others who were similarly situated to them" in a different class. *Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011). Then, if the court determines that the District's actions did discriminate based on a protected class, the court must determine whether the discrimination survives "the appropriate level of scrutiny." *Ashaheed,* 7 F.4th at 1250.

Purposeful discrimination may be shown directly or circumstantially. *Id.* Direct proof is evidence that there was a purposeful distinction between groups that is facially apparent from the action itself. *Id.* If, however, the action is facially neutral, a court may still infer purposeful discrimination from the "totality of the relevant facts," including through evidence of disparate impact on a particular group, historical background or specific sequence of events leading to the decision, and "departures from the normal procedural sequence." *Wash. v. Davis*, 426 U.S. 229, 242 (1976). While a plaintiff need not allege that discrimination was the "sole, or even the primary, motivation" behind the decision, they must at least show that "the state actor chose a particular course of action at least in part because of, not merely in spite of, its effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

In conclusory and vague fashion, Plaintiff asserts discrimination based on "sex, gender, presumed sexual orientation, and disability" and that Plaintiff was "similarly

11

situated to their peers in class to also had a "right to participate in the space." (SAC ¶ 221.) But Plaintiff does not allege how Plaintiff was "similarly situated" to an identifiable group, nor does Plaintiff explain how, if at all, Plaintiff was treated differently than members of those other identifiable groups. Plaintiff also fails to plausibly allege that Mr. Valand or Mr. Bloom treated Plaintiff differently than someone in another identifiable group based on Plaintiff's membership in a distinct group (which, as noted, is itself unclear). The well-pleaded allegations reflect that Mr. Valand and Mr. Bloom told Plaintiff to respect the choices of other students to not be Plaintiff's friend or socialize with Plaintiff. That is not purposeful discrimination based on a protected class.

Even if Plaintiff had plausibly alleged that Mr. Valand and Mr. Bloom purposefully treated Plaintiff differently based on a protected class, that treatment would likely survive judicial scrutiny. Claims of sex and gender discrimination are subject to "intermediate scrutiny," which asks whether treatment by sex or gender serves important governmental objectives and is substantially related to achievement of those objectives. *Craig v. Boren*, 429 U.S. 190, 197 (1976). Defendants were justified in advising Plaintiff how to navigate social tension with two other students, including that Plaintiff should not try to force them to be their friend. Claims of disability and sexual orientation discrimination are subject to rational basis review, an even less stringent scrutiny. *Cleburne*, 473 U.S. at 432. Mr. Valand and Mr. Bloom's advice was rationally related to the interest of schools helping students properly navigate social tensions.

A state actor in Mr. Bloom and Mr. Valand's shoes would not have known that they were violating the Equal Protection Clause by advising Plaintiff as they did. They are

12

therefore entitled to qualified immunity on that claim.

### B.    First Amendment (Claim 3).

Plaintiff claims that Defendants Valand and Bloom violated Plaintiff's First Amendment rights by: (1) suppressing Plaintiff's protected speech, (2) retaliating against Plaintiff's use of protected speech, and (3) interfering with Plaintiff's right to "petition" the government for a redress of grievances. Both individual Defendants are entitled to qualified immunity on this claim.

***Suppressing Speech***. The government may not restrict or infringe on an individual's free speech rights including by "compelling others to espouse or suppress certain ideas and beliefs." *Phelan v. Laramie Cmty. Coll. Bd. of Tr.*, 235 F.3d 1243, 1247 (10th Cir. 2000). "In order to compel the exercise or suppression of speech, the governmental measure must punish, or threaten to punish, protected speech by governmental action that is 'regulatory, proscriptive, or compulsory in nature.'" *Id.* (quotations omitted). Discouragement that is "minimal" and "wholly subjective" does not impermissibly deter the exercise of free-speech rights. *Id.* at 1247. Plaintiff's allegations that Mr. Valand and Mr. Bloom cautioned that Plaintiff could get in trouble if they continued their behavior, advised Plaintiff not to discuss the situation further, and told Plaintiff to "respect [the other students'] choices," do not reflect suppressed speech—this is, at most, it is minimal discouragement. *Seamons v. Snow*, 84 F.3d 1226 (10th Cir. 1996) (affirming dismissal of parents' First Amendment claim where "the only conduct of the defendants. . . were discussions (ultimately unsuccessful) to persuade them not to speak out publicly about [an] incident"). No person in Defendants' shoes would have known, based on

13

clearly established law, that they would be suppressing protected speech.

*Retaliation*. To state a First Amendment retaliation claim, Plaintiff must plausibly allege that: (1) they were engaged in constitutionally protected speech; (2) Defendants caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that speech; and (3) the adverse action was substantially motivated as a response to Plaintiff's exercise of free speech. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). Plaintiff does not plausibly allege any adverse action. Mr. Valand and Mr. Bloom merely recommended that Plaintiff not continue to pursue a friendship with the other students. Plaintiff claims that Mr. Valand cautioned that their behavior could result in police involvement; but statements concerning the illegality or impropriety of a plaintiff's conduct are insufficient, standing alone, to support a First Amendment retaliation claim. *Weise v. Colo. Springs, Colo.*, 421 F. Supp. 3d 1019, 1042 (D. Colo. 2019). No reasonable person in Defendants' shoes would have known that they were retaliating against Plaintiff in violation of the First Amendment.

*Right to Petition*. The First Amendment confers a right to petition the government concerning grievances. *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1236-37 (10th Cir. 2007). But the right to petition "confers no attendant right to a response from the government." *Id.* Here, Plaintiff alleges that they petitioned the school concerning their grievances associated with Students A and B and that Defendants responded. The fact that Plaintiff was able to petition the school alone satisfies the petition clause of the First Amendment. The fact that Plaintiff did not like the response—which the constitution does not require—does not amount to a violation of the petition clause.

14

### III.     Plaintiff has not plausibly alleged disability discrimination (Claim 8).

Plaintiff claims disability discrimination against the District under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act (ADA). Section 504 and the ADA are intended to ensure that "otherwise qualified [disabled] individuals [are] provided with meaningful access to the benefits" granted by a covered entity. *Havens v. Colo. Dep't of Corr.*, 897 F.3d 1250, 1263 (10th Cir. 2018). They "seek to ensure evenhanded treatment and the opportunity for [disabled] individuals to participate in and benefit from programs receiving federal financial assistance." *Id.* They do not, however, "guarantee the [disabled] equal results from participation in such programs and services." *Id.*

Section 504 and ADA claims involve the same substantive standards and are analyzed together. *Miller ex rel. S.M. v. Bd. Of Educ. Of Albuquerque Pub. Schs.*, 565 F.3d 1232, 1245 (10th Cir. 2009). To establish these claims, Plaintiff must show: (1) they are an individual with a disability, (2) the District is a "public entity" (ADA) and a federally funded "program or activity" (Section 504), and (3) the District discriminated against them (4) based on their disability. *Id.*; *Fry v. Napoleon Comm. Schs.*, 580 U.S. 154, 160-61 (2017). A "disability" is "a physical or mental impairment that substantially limits a major life activity." *Ellenberg v. N.M. Military Inst.*, 572 F.3d 815, 819, 824 (10th Cir. 2009).

Plaintiff alleges three theories of disability discrimination: intentional discrimination, retaliation, and failure to accommodate. None are plausible.

**Lack of Appropriate Person.** Before addressing the three theories of recovery, Defendants note that Plaintiff's disability discrimination claim is not plausible on its face because it does not plausibly allege that an appropriate person acted on the District's

15

behalf. Plaintiff asserts that the District committed disability discrimination through Defendants Valand and Bloom. Courts in this Circuit have recognized that, similar to claims under Title IX, public entities can be held liable only for the actions of appropriate persons authorized to act on the entity's behalf. *See e.g. Gradeless v. Kan. State Univ.*, 2023 WL 6541298, *5 (D. Kan. Oct. 6, 2023) (dismissing ADA and 504 claim because no appropriate person was alleged to know about the purported discrimination). As explained, Defendants Bloom and Valand are not appropriate persons, so this claim fails for that reason alone.

**Intentional Discrimination.** Intentional discrimination can be inferred from "deliberate indifference to the strong likelihood that pursuit of []questioned policies will likely result in a violation of federally protected rights." *J.V. v. Albuquerque Pub. Schs.*, 813 F.3d 1289, 1298 (10th Cir. 2016). Deliberate indifference is a demanding standard that requires both knowledge that a harm to a federally protected right is substantially likely and a failure to act upon that likelihood. *Id.* The "failure to act" must be "more than negligent and involve an element of deliberateness." *Id.*

Plaintiff has not plausibly alleged that Mr. Valand or Mr. Bloom intentionally treated them differently based on a disability or disregarded a strong likelihood that Plaintiff's rights would be violated. First and foremost, there is no allegation that either Defendant was aware that Plaintiff had a disability when Plaintiff was enrolled. Plaintiff admits that they were diagnosed with PTSD years after they left the District. (SAC ¶ 190.) Plaintiff alleges that Defendants were aware of certain behavior that might have indicated the presence of a disability. (*Id.* ¶¶ 244-45.) But the question is not whether they should have

16

known, in hindsight, that Plaintiff had a disability; it is whether they knew Plaintiff was disabled and looked the other way. Otherwise, the fact that Mr. Valand and Mr. Bloom gave Plaintiff advice about social dynamics that Plaintiff did not like does not plausibly allege deliberate indifference to a disability.

**Retaliation.** To state a prima facie claim for disability-related retaliation, Plaintiff must allege that: (1) Plaintiff engaged in protected activity; (2) they suffered a materially adverse action by the District either after or contemporaneously with their protected activity; and (3) there is a causal connection between the protected activity and the adverse action. *Reinhardt v. Albuquerque Pub. Schs. Bd. of Educ.*, 595 F.3d 1126, 1131-32 (10th Cir. 2010). If Plaintiff can prove these elements, then the burden shifts to the District to prove that it had a non-discriminatory basis for its action. *Id.* If the District makes this showing, then the burden shifts back to Plaintiff to prove that the proffered non-discriminatory basis was pretext. *Id.*

Plaintiff has not plausibly alleged that they engaged in any protected activity. For instance, Plaintiff did not request accommodations or complain that they had not received any. Second, Plaintiff has not plausibly alleged an adverse action. Receiving counseling advice that you do not like is not an adverse action. Thus, Plaintiff likely cannot plausibly allege a prima facie case. And even if Plaintiff could, Mr. Valand and Mr. Bloom had a non-discriminatory basis for advising Plaintiff as they did evident in the allegations themselves—to help a student navigate social dynamics with their peers.

**Failure to Accommodate.** Plaintiff's failure-to-accommodate claim is time-barred. Section 504 and the ADA do not include statutes of limitation. *Chavez-Bravo v. Brighton*

17

*Sch. Dist. 27J*, 775 F.Supp.3d 1142, 1150 (D. Colo. 2025). As a result, federal courts apply the relevant state limitations period for similar claims. *Id.* Courts have applied Colorado's general two-year limitation period to ADA and § 504 claims. *Id.* at 1151. When a federal statute borrows a State's limitations period, the State's tolling rules are ordinarily borrowed also. *Id.* So, Colorado's tolling statute that generally allows minors to wait until they are 18 until the limitations period begins to run also typically applies. *Id.* However, federal courts will not apply state tolling provisions if doing so would defeat the goals of the federal statute at issue. *Id.* Section 504 and the ADA, in the education context, exist to provide prompt resolution to students in need of supports in school. *Id.* at 1151-52. Plaintiff waited more than two years to file their disability discrimination claims and years after they left the District, which by then had no ability to address Plaintiff's concerns. Thus, tolling this claim would be contrary to the remedial purpose of § 504 and the ADA, and the Court should dismiss the claim as time-barred.

The claim is also not plausible. If the District knew that Plaintiff was disabled and "require[d] an accommodation of some kind [for them to] participate in or receive the benefits of its services," it would have needed to provide Plaintiff with reasonable accommodations to ensure meaningful access to the District's programs. *J.V. v. Albuquerque Pub. Schs.*, 813 F3d 1289, 1299 (10th Cir. 2016). The District would have been "on notice" that Plaintiff needed an accommodation when it knew that Plaintiff required one, "either because the need [was] obvious or because [Plaintiff] request[ed] an accommodation." *Id.* If accommodations were warranted, Plaintiff would be entitled to "reasonable" accommodations, not their preferred accommodations. *Selenke v. Med.*

18

*Imaging of Colo.*, 248 F.3d 1249, 1263 (10th Cir. 2001); *Nunes v. Mass. Dep't of Corr.*, 766 F.3d 136, 146 (1st Cir. 2014).

Plaintiff does not allege that Defendants knew Plaintiff had a disability and admits they were not diagnosed with PTSD until long after they left the District. (SAC ¶ 190.) Further, Plaintiff does not allege that they requested accommodations for a disability or were denied such accommodations. Nor do they plausibly allege that the need for accommodation was obvious yet ignored—rather, the allegations, accepted as true, reflect that Plaintiff was experiencing a challenging social dynamic, and that Mr. Bloom and Mr. Valand responded with counseling support—an accommodation in and of itself.

## IV.    Plaintiff's state-law claims should be dismissed.

### A.    CADA Claims.

Plaintiff asserts a separate disability discrimination claim under the Colorado Antidiscrimination Act (CADA), alleging discrimination based on "disability, sex, sexual orientation, gender identity, and/or gender expression." (SAC ¶ 261.)

First, CADA provides that courts review claims alleging disability discrimination under that law under "the same standards and defenses that are available under the [ADA] and its related amendments and implementing regulations." C.R.S. § 24-34-802. Thus, the ADA, § 504, and CADA claims rise and fall together. For the reasons described in Section III, supra, the Court should dismiss this CADA claim.

With alleged sex discrimination, a plaintiff must prove that "but for" their membership in an enumerated class, they would not have been denied the full privileges of a place of public accommodation. *Craig v. Masterpiece Cakeshop, Inc.*, 370 P.3d 272,

19

280 (Colo. App. 2015) (reversed on other grounds in 584 U.S. 617 (2018)).

Plaintiff has not plausibly alleged that, but-for their sex, gender, or "presumed sexual orientation," they would have been treated differently by the District. As noted, Plaintiffs does not allege membership in a specific class, let alone allege that Plaintiff would have been treated differently "but for" their membership in that class. Even accepting the well-pleaded allegations as true, Defendants Valand and Bloom were not "denying, refusing, or withholding" anything from Plaintiff, C.R.S. § 24-34-601; they were attempting to advise Plaintiff on how best to navigate a social challenge at school. Further, as also noted, Plaintiff has not plausibly alleged the denial of any privileges of the District.

**B.      The Court lacks subject matter jurisdiction over Plaintiff's state tort claims (Claims 10, 11, & 13).**

Plaintiff's tort claims of outrageous conduct, negligence, and failure to report child abuse against Mr. Valand are barred by the Colorado Governmental Immunity Act (CGIA). Under the CGIA, public employees have immunity from actions that lie in tort or that could lie in tort unless a specific waiver of immunity applies. C.R.S. § 24-10-101, et seq. Whether immunity exists under the CGIA is a question of subject matter jurisdiction reviewed under Fed. R. Civ. P. 12(b)(1). *Jackson v. Beston*, 2025 WL 2320372, *6 (D. Colo. 2025). "If a public employee raises the issue of sovereign immunity . . . the court shall suspend discovery . . . and the court shall decide such issue on motion." C.R.S. § 24-10-118(2.5).

**Time Barred.** A jurisdictional requirement for asserting tort claims against a public employee is providing a "notice of claim" within 182 days of the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or a

20

cause of action for such injury. C.R.S. § 24-10-109(1). Plaintiff did not meet this threshold requirement. Plaintiff's claims turn on events during the 2022-2023 school year, yet Plaintiff did not provide the District with a requisite notice of claim until July 8, 2025 (ECF 26-1)—nearly two years after that school year ended and well beyond 182 days.

Plaintiff unconvincingly suggests that they did not discover their injuries until February 2025. "Discovery" is when a "plaintiff knew or, through the exercise of reasonable diligence should have known (or, alternatively, discovered or should have discovered) the wrongful act." *Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo. 1993). Plaintiff's suggested delayed discovery is belied by their own allegations that right after they left the District, they tried to suppress their recollection of the events, tried to cope in silence, and feared sharing what happened. (SAC ¶ 184.)

**Willful and Wanton.** Plaintiff also fails to plausibly allege "willful and wanton" conduct, which is necessary to establish a waiver of Mr. Valand's immunity under the CGIA. Though the CGIA does not define "willful and wanton," Colorado courts, which federal courts have relied on to define the term have stated that it is conduct "wholly disregardful of the rights, feelings, and safety of others . . . <u>at times even imply[ing] an element of evil</u>," and "purposefully committed <u>which the actor must have realized as dangerous</u>, done heedlessly and recklessly, without regard to [the] consequences of the rights and safety of others, particularly the plaintiff." *Martinez v. Est. of Bleck*, 379 P.3d 315, 232 (Colo. 2016) (emphasis in original). Mr. Valand's conduct does not come close to meeting this extremely high bar.

21

C.    **Plaintiff's tort claims are otherwise not plausible on their face.**

**Outrageous Conduct (Claim 10).** The elements of outrageous conduct are that (1) the defendant engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress. *Culpepper v. Pearl Street Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994). Outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* Plainly, this is an extremely high bar. Whether conduct is outrageous is a threshold issue that courts decide as a matter of law. *Green v. Qwest Corp.*, 155 P.3d 383, 385 (Colo. App. 2006). The core of Plaintiff's allegations is that, over several meetings, Mr. Valand could not resolve Plaintiff's distress over their unrequited friendship and provided counseling Plaintiff disagreed with. (SAC ¶¶ 28, 59, 77, 268.) This is not extreme and outrageous conduct.

**Negligence (Claim 11).** To prove a claim of negligence, a plaintiff must show: (1) the defendant owed a legal duty of care, (2) the defendant breached that duty, (3) the plaintiff was injured, and (4) the defendant's breach caused that injury. *Lopez v. Trujillo*, 399 P.3d 750, 753 (Colo. App. 2016). Generally, simple negligence cannot provide the basis for the recovery of damages for mental or emotional suffering, unless such negligence has resulted either in physical injury or in the creation of a reasonable risk of bodily harm. *Williams v. Cont'l Airlines, Inc.,* 943 P.2d 10, 16 (Colo. App. 1996). It is only if the conduct can be determined to be willful or wanton that the recovery of such damages is otherwise authorized. *Id.* Alternatively, on a claim of negligent infliction of emotional

22

distress, the plaintiff must show they sustained physical injury or was in the "zone of danger." *Card v. Blakeslee*, 937 P.2d 846, 849 (Colo. App. 1996). Colorado courts have not carved out an exception to this requirement for claims of negligent infliction of emotional distress allegedly caused by mental health professionals. *Id.* Plaintiff does not plausibly allege that Mr. Valand's conduct was willful and wanton, as explained above. Nor does Plaintiff allege that they were placed in a zone of danger or experienced physical injury. Plaintiff's allegations do not plausibly state a claim of negligence.

**Failure to Report (Claim 13).** A mandatory reporter "who has reasonable cause to know or suspect that a child has been subjected to abuse or neglect" must immediately report it. C.R.S. § 19-3-304(1)(a). Child abuse is "an act or omission . . . that threatens the health or welfare of the child" and includes "emotional abuse," which the statute further defines as "an identifiable and substantial impairment of the child's intellectual or psychological functioning or development or a substantial risk of impairment of the child's intellectual or psychological functioning or development." C.R.S. § 19-1-103(1)(a).

First, this claim is time barred. A failure to report claim accrues at the time a report should have been made but was not. *MacIntosh v. Cnty. Court of Arapahoe*, 477 P.3d 765, 770 (Colo. App. 2020). The other students' acts are alleged to have occurred by May 2023 and would be subject to a two-year statute of limitations, C.R.S. § 13-80-102, thus terminating well before Plaintiff's November 2025 complaint.

Further, Plaintiff does not plausibly allege that they suffered child abuse. Plaintiff's allegations reflect that they were rebuffed by two peers who did not want to be their friend or involve them in conversations. That is not child abuse. Plaintiff's analogizing the other

23

students' teenage behavior to true emotional abuse of a child through "isolation" and "inadequate nurturing or affection" by a caregiver trivializes the serious nature of child abuse and is not plausible. *See Id.* (other sections of definition of child abuse including children subjected by caregivers to serious unexplained injury or death, sexual abuse, exposure to controlled substances, or inadequate living conditions). Plaintiff also fails to plausibly allege that Mr. Valand knew their health or welfare was substantially impaired by the other students' conduct. Plaintiff alleges that Mr. Valand knew Plaintiff was "distressed" by this dynamic, but that is a far cry from having reason to know that Plaintiff's health and welfare was substantially impaired by child abuse, much less that Mr. Valand willfully violated his duty as a mandatory reporter. Plaintiff's claim is not plausible and should be dismissed.

**Attorney Fees**. If the Court dismisses Plaintiff's tort claims, Defendants are entitled to an award of reasonable attorney fees under C.R.S. § 13-17-201.

## V.    Plaintiff cannot show any chance of future injury or any active dispute warranting injunctive or declaratory relief.

Because none of Plaintiff's claims are legally viable, Plaintiff is not entitled to any form of relief, including damages and declaratory and injunctive relief. But Plaintiff is otherwise not entitled to declaratory or injunctive relief based on Plaintiff's allegations.

Injunctive relief is available only if there is an imminent threat of future injury. *Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 2011 WL 2173713, at *3 (D. Colo. June 2, 2011). A plaintiff seeking injunctive relief based on past misconduct "must demonstrate a real and immediate threat of repeated future harm." *Id.* There is no way for Plaintiff to prove that they face a risk of immediate future harm by the District or its employees, as

Plaintiff left the District long ago, does not allege any plans to return, and is of college age anyway. As a result, Plaintiff cannot obtain injunctive relief in this case, and the Court should dismiss their request for relief.

Likewise, "in the context of an action for declaratory relief, a plaintiff must be seeking more than a retrospective opinion that [they were] wrongly harmed by the defendant." *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011). The declaratory judgment must settle "some dispute which affects the behavior of the defendant toward the plaintiff," so the court is not rendering an impermissible advisory opinion on an otherwise moot issue. *Id.* (quoting *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010)). Plaintiff cannot show any remedial benefit—they have left the district, graduated high school and started college out of the country. The Court should dismiss Plaintiff's claim for declaratory relief.

### Conclusion

Plaintiff has not plausibly alleged relief under any claim. Thus, the Court should dismiss Plaintiff's claims under Rule 12(b)(6). The Court also lacks subject matter jurisdiction over Plaintiff's tort claims, which can also be dismissed under Rule 12(b)(1).

Respectfully submitted this 15th day of April 2026.

*s/Elliott V. Hood*
Elliott V. Hood
Zoe Verhoeven
CAPLAN AND EARNEST LLC
3107 Iris Avenue, Suite 100
Boulder, Colorado 80301
303-443-8010
ehood@celaw.com
zverhoeven@celaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and emailed to the following:

Riley Doe
rileydoevsssd@gmail.com
*Pro Se Plaintiff*

<u>*s/Shelley McKinstry*</u>
Shelley McKinstry, Paralegal