IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-03519-CNS-TPO

RILEY DOE,

Plaintiff,

v.

STEAMBOAT SPRINGS RE-2 SCHOOL DISTRICT,
THOMAS VALAND, and
DANIEL BLOOM,

Defendants.

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

---

## INTRODUCTION

This case concerns a systemic and discriminatory refusal at Steamboat Springs High School (SSHS) to provide a safe, non-discriminatory classroom environment. Plaintiff shared a table in class with Students A and B. SAC ¶¶16-26. Defendants were intimately aware of the distressing, constant, and sex-based nature of bullying Plaintiff was enduring in class (*Id.* ¶48, ¶52, ¶¶28-30), understood it was intended to remove Plaintiff from the class environment (*Id*. ¶¶36-41, ¶44), and was aware it was causing Plaintiff severe distress, suicidal thoughts, and inability to focus or participate in and out of class (*Id*. ¶¶65-77). In response, Defendants leveraged Plaintiff's sex and disability (*Id.* ¶¶84-94, ¶¶122-128, ¶¶132-136) to actively support and defend the harassment, (*Id.* ¶¶99-108) assert Plaintiff's insistence on participation with their peers in class was

criminal "stalking behavior" that could get them in trouble with the police and become "quite the problem" for them, and that they could not object to it anymore. *Id.* ¶¶84-97 This was despite knowledge that Plaintiff was not romantically interested, did not intend to cause any problems, and was actively attempting to accommodate the students. *Id.* ¶¶114-121, ¶¶45-52. This resulted in Plaintiff further isolating themselves, withdrawing from class participation *(Id.* ¶¶160-163), students and staff doubling down, (*Id.* ¶¶167-170) Plaintiff acting on their suicidal thoughts, (*Id.* ¶182) leaving the district, (*Id.* ¶181), and enduring severe confusion and distress for several years when engaging with their peers in educational environments (*Id.* ¶193) before finally being diagnosed with PTSD and filing this civil action. *Id.* ¶190.

Defendants repeatedly mischaracterize and minimize this action as a matter of "friendship" and "social choice." Not only is this a factual dispute which must be resolved in Plaintiff's favor, but the argument itself is facially discriminatory: Defendants assert the other students' "social" choice to harass and remove Plaintiff from participation during class time overrides Plaintiff's "social" choice to exercise their right to participate. Students generally do not get to pick and choose which students are allowed to participate in class. "Friendship" is pretext for unlawful discrimination. *Id.* ¶¶138-141.

## STANDARD OF REVIEW

Dismissal at the pleading stage is a "harsh remedy" that must be applied cautiously to protect the liberal pleading standards of the Federal Rules and the interests of justice. *Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

2

to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the pleaded facts permit the reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678.

Rule 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). In evaluating a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor. The Federal Rules therefore reflect a strong preference for resolving claims on the merits rather than dismissing them at the pleading stage. *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989).

Plaintiff is *pro se*; this court must liberally construe Plaintiff's allegations.

## ARGUMENT AND AUTHORITY

### I.    Plaintiff has plausibly alleged several Title IX theories

`    Title IX prohibits intentional "discrimination" "on the basis of sex." *Jackson v. Birmingham Bd. of Ed.* 544 U.S. 167, 175 (2005), 20 U.S.C. § 1681. Plaintiff alleges intentional discrimination, retaliation, and deliberate indifference to student harassment.

**Student-on-student** – Deliberate Indifference

Defendants claim that "District staff were trying in earnest, over several months, to advise Plaintiff … that is not clearly unreasonable" (ECF 24 pg. 5). However, the relevant question under *Davis* is not whether Defendants responded or for how long, but whether said response is "clearly unreasonable in light of known circumstances." *Doe v. Sch. Dist. No. 1,* 970 F.3d 1300, 1314 (10th Cir. 2020) (quotations omitted). With full

knowledge of the distress and harm the students were causing Plaintiff (SAC ¶¶65-77, ¶¶35-40, ¶44, ¶52, ¶¶54-59), Defendants actively supported and defended the bullying and Plaintiff's segregation/removal from the class environment, (*Id.* ¶¶99-108) asserted their insistence on participating with their peers in class (*Id.* ¶99) was "stalking behavior," that the police could get involved and this could become "quite the problem" for Plaintiff, (*Id.* ¶¶91-98), while explicitly citing and using Plaintiff's gender as a basis (*Id.* ¶¶122-124, ¶¶84-94). Valand propagated the discriminatory narrative to other adults, resulting in a uniform discriminatory response and denial of support. (*Id.* ¶¶91-97) This was not remotely justified; Defendants understood Plaintiff was not romantically interested, (*Id.* ¶115) did not intend to cause any problems, (*Id.* ¶51) and was actively attempting to accommodate the other students. *Id.* ¶116. These discriminatory and abusive actions fall far short of any conceivable standard of reasonableness.

**Student-on-student** – Severe, pervasive, objectively offensive, and denial of benefits

Plaintiff's situation is complex, and whether the situation was sufficiently severe, pervasive, and objectively offensive to deny equal access to classroom participation is a fact-intensive question. Dismissal on these grounds is not suitable at this time.

> But the plaintiff is not required to prove her case at the motion-to-dismiss stage. See id. at 1274 ("A complaint raising a claim of discrimination does not need to conclusively establish a prima facie case of discrimination."). Further, matters of degree—such as severity and pervasiveness—are often best left to the jury. Thus, we have observed that "the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is quintessentially a question of fact," *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999); and it is even less suited for dismissal on the pleadings.

*Doe v. Sch, Dist. No. 1*, 970 F.3d 1300, 1311-1312 (10th Cir. 2020).

Additionally, Defendants' cited authority is distinguishable. *Davis* holds that damages are unavailable for "simple acts of teasing and name-calling," but the SAC alleges conduct that goes well beyond such behavior. *Davis* focuses on whether harassment is so severe, pervasive, and objectively offensive <u>that it effectively denies a student equal access</u> to the institution's educational resources and opportunities. *Davis*, 526 U.S. 629*,* 651. It is not necessary to show physical exclusion to demonstrate the actions of another student have denied <u>equal</u> access to an opportunity. *Id.*

Courts have acknowledged that even minor incidents or teasing can be sufficiently numerous or incessant to qualify as "severe" under Title IX. See *Jane Doe v. Don Galster*, 768 F.3d 611 at 618 (7th Cir. 2014), see also *Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 394 F. Supp. 2d 1299, 1309 (D. Kansas 2005).

Defendants additionally misstate Plaintiff's compliant. Plaintiff does not complain of exclusion from only "personal discussions or activities," but rather deliberate, systematic, and coordinated removal and isolation from <u>all conversations in every class session for a year</u>, including personal, collaborative, and academic conversations (SAC ¶¶32-40), despite Plaintiff's consistent attempts to participate and accommodate (*Id.* ¶¶45-52). Defendants themselves understood the students' behavior to be deliberate attempts to remove Plaintiff from the classroom environment (*Id.* ¶44, ¶132-136), and understood to cause Plaintiff immense distress during and prior to class, isolation, and inability to focus or participate (*Id*. ¶¶65-77). The Defendants actively supported and defended Plaintiff's removal and framed their insistence on participating as sexually predatory, and warned of serious, criminal consequences for continuing. SAC ¶¶84-108.

Hostile conduct resulting in targeted ostracism and isolation has been recognized by the Tenth Circuit as a hostile work environment. *O'Shea*, 185 F.3d 1093, 1101.

<u>Plaintiff missed classes.</u> SAC ¶55, ¶74, ¶154. Plaintiff was unable to participate or focus in AP French and other classes, enduring intense distress in anticipation of and during class, as well as grades declining. *Id.* ¶¶65-78, ¶¶171-175, ¶¶176-179. Class participation and peer socialization is a "perhaps essential" advantage of the school experience which can result in denial of access under Title IX. *Doe v. Sch. Dist. No. 1.,* 970 F.3d 1300, 1313 (10th Cir. 2020). Missing class can cause loss of educational benefit or opportunity. *Sturdivant v. Fine*, 22 F.4th 930 at 937 (10th Cir. 2022). Plaintiff was subjected to a pervasive discriminatory environment spanning several years. SAC ¶¶1-11. Plaintiff changed schools to avoid the hostile environment, (*Id.* ¶181) which is a deprivation of educational benefits or opportunities. *Zeno v. Pine Plains Central Sch. Dist.*, 702 F.3d 655 at 667 (2nd Cir. 2012) (withdrawing to avoid hostile environment is denial of benefits and opportunities). This resulted in PTSD and inability to participate in higher education. SAC ¶¶190-194. Because Defendants used the relationship between the students ("friend group") as pretext to support and defend the bullying and the assertion that Plaintiff's insistence on participating in class conversations was inappropriate or sexually predatory, (*Id.* ¶¶138-141, ¶191) Defendants' actions directly resulted in a decline in their AP French test score. *Id.* ¶178, ¶191.

Defendants claim Plaintiff was not physically/administratively "removed," however, Plaintiff was forced into something worse – being forced to watch as they were removed from all interaction and deliberately treated as invisible by their peers in every

6

class session, despite consistent attempts to participate. SAC ¶34. Plaintiff did in fact physically isolate themselves after Defendants warned they could get in trouble with the police for continuing to participate. *Id.* ¶¶160-163. This was not occasional, peer conversations are an integral part of the AP French curriculum and setup. *Id.* ¶¶16-18.

As to Defendants' authority, in *Cox*, the plaintiff's complaint did not allege that the student was deprived of access to any school benefit or opportunity, merely that the other students' behavior caused them personal difficulty. The other cases cited by Defendants involve isolated incidents or short-term (6 weeks) behavior as well as mere teasing and no staff enforcement and are therefore inapposite.

**Student-on-student** – Based on sex

Plaintiff has plausibly alleged that the students' harassment was based on sex. Plaintiff has alleged a general environment of discrimination and segregation at SSHS. SAC ¶¶1-11. The student head of the LGBTQ club had asserted, specifically regarding the instigator in this case (Student A), that Plaintiff would not be able to participate with them or their friends due to their respective genders. *Id.* ¶1. The students engaged in a persistent and deliberate pattern leveraging gender stereotypes to deny Plaintiff equal access to class participation and the school environment (*Id.* ¶¶2-7, ¶48, ¶167). Plaintiff was systematically and deliberately removed without cause from class participation, despite consistent attempts to participate and accommodate. *Id.* ¶¶45-53. Plaintiff informed Defendants of their belief the students' actions were intended to segregate Plaintiff on the basis of sex. SAC ¶52. Even though Plaintiff does not have proof each and every otherwise baseless and deliberate refusal of acknowledgment and

7

participation by the students towards Plaintiff was based on sex, such proof is not necessary to sustain Plaintiff's claim. "[F]acially neutral abusive conduct can support a finding of gender animus sufficient to sustain a hostile … environment claim when that conduct is viewed in the context of other, overtly gender-discriminatory conduct." *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1097 (10th Cir. 1999).

**Spending clause liability / Appropriate Person**

Under Title IX, an institution can be held liable "only for its own misconduct." *Davis v. Monroe County Bd. of Ed.*, 526 U.S. 629, 640 (1999). The alleged discrimination must be attributable to the institution. When it is not, an "appropriate person" must discriminate to ensure the discrimination is an "official decision." *Gebser v. Lago Vista Independent Sch. Dist.*, 524 U.S. 274, 276 (1998). An "appropriate person" is "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf." *Id.* at 290. Because officials' roles vary between school districts, who is an "appropriate person" is a fact-based inquiry. See *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1247 (10th Cir. 1999).

Defendants point to several cases in an attempt to show that a counselor or social worker is not an appropriate person. However, in all their social worker/counselor cases, the harasser was a teacher or principal. A school counselor or social worker generally does not have authority to "institute corrective measures" over other employees, and so cannot be an "appropriate person" in such a context. In *Ross*, the court held being able to report discrimination to the institution is not sufficient, as any employee or person has such authority. However, in this present case, the harasser was

not a teacher/principal, it was students, and the counselor had authority under district policy to take action to address student bullying on behalf of the institution. SAC ¶¶142-159. The Tenth Circuit has held that even a teacher can be an "appropriate person" for student-on-student harassment if they have authority to discipline the students in the context where the harassment was occurring. *Murrell,* 186 F.3d 1238*,* 1248.

Additionally, the individual defendants had authority to determine the counseling department's response, and did in fact do so. See SAC ¶¶152-158. As such, they were "appropriate persons" for any action they took on behalf of the counseling department (such as restricting Plaintiff's access to counseling or treating Plaintiff's participation in class as sexually predatory). Whether an action is attributable to the institution can be shown through the "appropriate person" standard or if their action otherwise defined the funding recipient's response. See *Jane Doe v. DC*, No. 23-7135, (D.C. Cir. Aug. 19, 2025) "To be sure, the conduct of an individual administrator … could perhaps demonstrate deliberate indifference if the individual administrator's conduct materially defined the funding recipient's response." The actions of the individuals satisfy the *Gebser* test and defined the institutions' response; they were charged by the district to and coordinated to present a unified discriminatory response to the bullying/harassment as the counseling department. See SAC ¶¶142-159. No notice is required for institutional action; notice and deliberate indifference is not the only way for an institution to "discriminate" "on the basis of sex"[1]

---

1    *Jackson*, 544 U.S. 167, 175 (2005). See also *Mansourian v. Regents of Univ. of California*, 602 F.3d 957 at 967, 968 (9th Cir. 2010) ("The Supreme Court has made clear that no notice requirement is applicable to Title IX claims that rest on an affirmative institutional decision. … In *Gebser* and *Davis*, the Court stated, 'we emphasized that [the notice] limitation on private damages actions is not a bar to

Plaintiff has alleged other people who could also be considered appropriate persons were aware of the harassment, though Plaintiff does not recall the precise content of their conversations. SAC ¶¶152-153.

**Intentional Discrimination by Defendant SSSD.** Deliberate indifference to third party discrimination is not the only way for an institution to "discriminate" "on the basis of sex." "'Discrimination' is a term that covers a wide range of intentional unequal treatment; by using such a broad term, Congress gave the statute a broad reach. … Courts 'must accord' Title IX 'a sweep as broad as its language'" *Jackson,* 544 U.S. 167, 175*.* (citations omitted). Even fully disregarding the students' actions, the institution's response alone constitutes "discrimination" "on the basis of sex," because Defendants took several abusive, discriminatory, and outrageous actions while directly citing Plaintiff's gender. See SAC ¶¶206-210, and deliberate indifference, *supra*.

**Retaliation (*Jackson*).** Additionally, Defendants' response qualifies as an adverse action in response to complaining about discrimination. An action is materially adverse under Title IX[2] if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 148 U.S. 53, 68 (2006). While "petty slights," "minor annoyances," and "lack of good manners" do not qualify, "the standard [is phrased] in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context

---

liability where a funding recipient intentionally violates the statute.'"), *Fitzgerald v. Barnstable School Comm.*, 555 U.S. 246, 255 (2009) ("Title IX has … no notice provisions").

2    The Title VII adverse action standard applies in Title IX cases. See *Kincaid v. Unified Sch. Dist. No. 500*, 94 F.4th 936 (10th Cir. 2024). The Title VII standard is in line with *Jackson* where the court held one purpose of prohibiting retaliation was to protect the ability to report discrimination to the district to provide individual citizens protection against discriminatory practices. *Jackson* at 180, 181.

matters. 'The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships…" *Id.* at 69. Additionally, Plaintiff need not show some tangible, subjective psychological or monetary injury to show retaliation. See *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d at 1079, 1090 (2007).

As a high school student, there was a strong expectation that students at school adhere to adult directions, and particularly that male students do not sexually harass female students. Plaintiff was in a vulnerable state; confused about the cause of their strong feelings of distress and sought assistance from Defendants. SAC ¶68.

Plaintiff was engaged in a protected activity, complaining about discrimination and segregation in class (SAC ¶211). In response, Defendants leveraged their authority and the "surrounding circumstances and expectations" to assert that Plaintiff's insistence on class participation and their strong distress towards the students doing the bullying amounted to sexual harassment or criminal "stalking," that they could get in trouble with the police if they did not "back off," propagating their narrative with other staff and Plaintiff's parents, immediately followed by telling Plaintiff they could not complain about this – and only this – situation. *Id.* ¶¶212-213, ¶¶84-97. This was not remotely justified; Defendants understood Plaintiff was not romantically interested, did not intend to cause any problems, and was actively attempting to accommodate the students. *Id.* ¶¶114-121, ¶¶45-52. This would dissuade any reasonable person, let alone student, from continuing to make complaints regarding the alleged discrimination and segregation in class, and was taken in response to and intended to silence Plaintiff's complaints, and therefore, qualifies as retaliation under Title IX. Following this, Plaintiff

ceased raising concerns to staff, fearing serious consequences. *Id.* ¶¶160-163.

A couple of circuits require an adverse action be school related as opposed to employment related. *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2nd Cir. 2011). The Tenth Circuit has not adopted this requirement. In any case, Defendants' actions were school related because they concerned class participation and school counseling. C.f. *Doe v. Univ. of Ky.*, 111 F.4th 705, 717 (6th Cir. 2024).

## II.    Plaintiff has plausibly alleged constitutional violations and Defendants are not entitled to qualified immunity.

Qualified immunity protects officials sued in their personal capacities only when their conduct (1) did not violate a constitutional right, or (2) the right was not clearly established at the time of the violation. *Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018). It applies only when "the record plainly demonstrates no constitutional right has been violated, or that the allegations do not offend clearly established law." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). A right may be clearly established even without a case involving identical facts if existing precedent "appl[ies] with obvious clarity to the specific conduct in question." *A.B. v. Adams-Arapahoe 28J Sch. Dist.*, 831 F. Supp. 2d 1226, 1240–41 (D. Colo. 2011) (quoting Hope v. Pelzer, 536 U.S. 730, 741 (2002)). Moreover, because qualified immunity is a fact-specific inquiry, resolving it at the motion to-dismiss stage is disfavored where the complaint plausibly alleges constitutional violations. *Thompson v. Ragland*, 23 F.4th 1252, 1256 (10th Cir. 2022).

**Equal Protection.** Defendants' actions were taken because of Plaintiff's protected characteristics. SAC ¶¶122-124, ¶¶114-141. Plaintiff was similarly situated to

the other students because they were a student attempting to participate in the classroom environment. *Id.* ¶¶114-121. Plaintiff explicitly asserts "sex, gender, presumed sexual orientation, and disability" as identifiable groups, and explains how they were treated differently than members of other groups. *Id.* ¶¶122-124, ¶¶221-224. Defendants assertion of "friendship choice" is a pretext for supporting Plaintiff's removal from classroom participation on the basis of sex. *Id.* ¶¶138-141.

Defendants assert that such a decision would survive judicial scrutiny. "To survive intermediate scrutiny, the Government must provide a justification for the sex-based classification that is 'exceedingly persuasive,' and that classification must serve 'important governmental objectives' through means 'substantially related to' achieving those objectives." *Doe v. Rocky Mountain Classical Acad.*, 99 F.4th 1256, 1260 (10th Cir. 2024) (citing *Virginia*, 518 U.S. 515, 524). It "must not rely on overbroad generalizations about the different talents, capacities, or preferences of males and females." *United States v. Virginia*, 518 U.S. 515, 516 (1996). Defendants' actions fall far short of this standard. See **SAC ¶¶109-111**. Even if Defendants could provide such a justification, at the 12(b)(6) stage, this issue is not sufficiently developed to resolve it in favor of Defendants. *Rocky,* 99 F.4th 1256, 1261.

Finally, Defendants assert qualified immunity. However, it is clearly established that school officials cannot treat students differently on the basis of sex, especially when handling student concerns. *Fitzgerald v. Barnstable School Comm.*, 555 U.S. 246 (2009). The Tenth Circuit has held that "the Equal Protection Clause prohibits the 'intentional, arbitrary and unequal treatment of similarly situated individuals …'"

*Sturdivant v. Fine*, 22 F.4th 930, 938 (10th Cir. 2022). Even if it were not clearly established, such a violation is so obvious any reasonable official in Defendants' shoes would have known it was a constitutional violation. Class participation and access is a most basic educational function, and any reasonable official must have known that telling a distressed student being systematically bullied out of class participation that their mere participation in class with their peers (SAC ¶99) was sexually predatory "stalking behavior" that could involve law enforcement on the basis of sex or disability, (*Id.* ¶¶84-97, ¶¶122-128) and propagating a discriminatory response with other staff and adults (*Id.* ¶¶93-94, ¶157) would violate Plaintiff's rights. When a constitutional right is "beyond debate," no similar case is necessary. "Even without a precedent involving similar facts, the Equal Protection Clause obviously prohibited an acting head coach from orchestrating a boycott based on a team member's race." *Id.* at 939.

**Freedom of Speech.** "In order to compel the exercise or suppression of speech, the governmental measure must punish, or threaten to punish, protected speech by governmental action that is 'regulatory, proscriptive, or compulsory in nature.'" *Phelan v. Laramie Cmty. Coll. Bd. of Tr.*, 235 F.3d 1243, 1247 (10th Cir. 2000). (quotations omitted). A threat does not need to be explicit to chill speech. *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1290 (10th Cir. 2004) (holding even though the defendants did not explicitly threaten, they made it "abundantly clear" the plaintiff "would not be able to continue in the program").

When a school official with authority over a student labels a student's speech as criminal, sexually predatory behavior, warns the police could get involved and it could

14

become "quite the problem" for them, and immediately tells them they can no longer speak about only this situation, any reasonable student would understand that as a clear directive to "stop raising the issue, or risk serious consequences," rather than, as Defendants contend, "minimal discouragement." See SAC ¶¶112-113, ¶¶91-97. After Defendant Valand's statements, Plaintiff ceased raising concerns to all staff (not just Defendant Valand), fearing serious consequences. *Id.* ¶¶160-163. As to Defendants' authority, in *Seamons v. Snow*, 84 F.3d 1226 (10th Cir. 1996), the conversations with the parents were merely attempts at persuasion, lacking any mention of punishment.

**Retaliation.** Defendants contend that "statements concerning the illegality or impropriety of a plaintiff's conduct are insufficient," referencing *Weise v. Colo. Springs, Colo.*, 421 F. Supp. 3d 1019, 1042 (D. Colo. 2019). In *Weise*, the government official talked publicly to media outlets claiming the plaintiff had engaged in illegal or improper conduct. The court reasoned that *reputational injury* is insufficient to defeat the interest in robust *debate* on *public* issues. *Id.* (citing *Eaton*, 379 F.3d at 956). However, the Tenth Circuit has held that, in a school context, defamation/scapegoating in retaliation for complaining about sex discrimination is clearly established first amendment adverse action. See Principal Anderson's conduct, *Stepp v. Lockhart*, 168 F.4th 1286, 1312 (10th Cir. 2026). Plaintiff does not complain of public defamation to media outlets, rather, Plaintiff alleges Defendants, as school counselors, responded to Plaintiff's speech with a coordinated response in the department and to Plaintiff's parents to treat Plaintiff's participation in class (SAC ¶99) as sexual misconduct, along with the aforementioned threats of serious and criminal punishment right before instructing Plaintiff to cease

speaking on this topic and this topic only. *Id.* ¶¶112-113. Defendants understood Plaintiff was not romantically interested, did not intend to cause any problems, and was actively taking steps to accommodate the students. *Id.* ¶¶115-121, ¶¶51-52. Such action would chill any person of ordinary firmness from continuing to speak. Indeed, in Plaintiff's case, this resulted in being unable to speak out due to fear of serious consequences.

**Right to petition.** Plaintiff does not complain of not receiving a response, rather, being restricted from complaining about the distressing situation. See SAC ¶¶91-92.

The conduct at issue is clearly established as unlawful. It is clearly established that implied threats can restrict speech. See *Axson-Flynn*, 356 F.3d 1277, 1290. Under *Tinker*, it is clearly established that a school district can only restrict a student's speech if "in class or out of it, which for any reason — whether it stems from time, place, or type of behavior — materially disrupts classwork or involves substantial disorder or invasion of the rights of others" *Tinker v. Des Moines Sch. Dist.*, 393 U.S. 503, 509 (1969). Plaintiff's speech did not disrupt classwork; nor cause substantial disorder; nor did it invade the rights of others. Nearly all of Plaintiff's speech was not directed at any student, rather, the adults responsible. Defendants can show nothing but an "undifferentiated fear or apprehension of disturbance" which is clearly established to not be "enough to overcome the right to freedom of expression." *Tinker* at 737; see SAC ¶¶79-90. Further, there is Tenth Circuit precedent which puts the lawfulness of this issue even further beyond debate. In a school context, scapegoating specific parents' complaints for ending sex-segregated classes is clearly established retaliation. *Stepp v. Lockhart*, 168 F.4th 1286, 1312 (10th Cir. 2026). Requiring a student to apologize to

their team for reporting hazing is clearly established as unlawful. *Seamons v. Snow*, 84 F.3d 1226, 1238 (10th Cir. 1996). Punishing a student for speech encouraging students to post "honest" reviews for a professor is also clearly established as unlawful. *Thompson v. Ragland*, 23 F.4th 1252, 1260 (10th Cir. 2022) (collecting cases). The unlawfulness of informing a student their participation in class was sexually predatory and they could get in criminal trouble for insisting on being treated as a participant in class and objecting to discrimination is clearly established. Additionally, such a violation is so obvious any reasonable official would have been on notice such action is unlawful.

### III.    Plaintiff has plausibly alleged an ADA/§504 violation

**Spending clause liability / Appropriate person**

As described above in the Title IX section and ¶¶142-159, ¶243 of the SAC, the individual Defendants were authorized to act on behalf of Defendant SSSD for the purposes of responding to bullying and to manage disability-related concerns.

**Intentional Discrimination.** Defendant Valand was informed and aware of substantial impairments in Plaintiff's ability to concentrate, think, communicate, and learn. SAC ¶245, ¶¶65-78, ¶76. The definition of "disability" is interpreted broadly, and anxiety and constant distress (PTSD) qualify. *Way v. Missouri City,* 133 F.4th 509, 519, (5th Cir. 2025), *Rodgers v. Gary Cmty. Sch. Corp.,* 167 F. Supp. 3d 940, 950 (N.D. Indiana 2016). Plaintiff need not use "magic words" or mention the ADA to seek assistance for their disability. *Smith v. Midland Brake, Inc.,* 180 F.3d 1154 at 1172 (10th Cir. 1999). Even if Defendants did not know of Plaintiff's disability, Plaintiff has alleged Defendants regarded (perceived) Plaintiff as having a communication disability and

discriminated against them on that basis. SAC ¶¶132-136, ¶246. While Plaintiff did in fact inform Defendants of their disability, this is not even a requirement if the disability were obvious or otherwise known to Defendants, as alleged by Plaintiff, especially in cases where Plaintiff did not consider themselves disabled. *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2nd Cir. 2008).

Defendants asserted that because Plaintiff had "ruminated" on the issue for a long time, Plaintiff "wanted to … I dunno," and that this kind of thing made "females, especially" feel worried and concerned (SAC ¶86), implying Defendant saw Plaintiff's wish to engage with their peers in class as dangerous and sexually predatory because of their anxiety/distress/disability. Defendants characterized Plaintiff's disability and wish to participate in class as "stalking behavior," warned they could get in trouble with the police, and refused to support them, citing missed "social cues." (communication disability) *Id.* ¶¶132-136, ¶¶84-98. Defendants did not believe Plaintiff's assertion they had been friends with Student B. *Id.* ¶90. Discrimination based in stereotyped views of the mentally disabled constitutes an ADA violation. See *Bolmer v. Oliveira*, 594 F.3d 134, 149 (2nd Cir. 2010) (affirming a Title II violation where staff committed the plaintiff to a hospital on a belief the patient was dangerous due to a stereotyped conclusion that their insistence they had a sexual relationship with their case worker was a delusion), Cf. *Lesley v. Hee Man Chie*, 250 F.3d 47, 55 (1st Cir. 2001) ("a plaintiff may argue that her physician's decision was discriminatory on its face, because it rested on stereotypes of the disabled rather than an individualized inquiry into the patient's condition.")

**Retaliation.** Plaintiff engaged in a protected activity. Plaintiff was struggling due

18

to their distress and anxiety, and had been seeking assistance resolving the bullying and addressing a potential communication impairment ("social cues"), in order to be able to participate in class with other students. SAC ¶¶65-78, ¶¶27-31. Seeking assistance with a disability to be able to participate in class constitutes a request for accommodation. "In expressing a desire for reassignment, an employee need not use magic words. But, the employee must convey to the employer a desire to remain with the company despite his or her disability and limitations." *Smith*, 180 F.3d 1154 at 1172.

Further, Plaintiff has plausibly alleged adverse action. Plaintiff has already argued the standard is met under Title IX. *Reinhardt v. Alberquerque Public Sch. Bd.* 595 F.3d 1126, 1133 (10th Cir. 2010) ("We have applied [the Title VII] standard to retaliation claims under the ADA, and ADA standards apply to § 504 claims.") (collecting cases).

Had Plaintiff not sought support for their distress or potential communication disability, Defendants would have not framed their distress and insistence on having their needs in class met as sexually predatory. Plaintiff's complaint plausibly alleges retaliation. All reasonable inferences must be resolved in Plaintiff's favor. Defendant's purported non-discriminatory reason cannot be evaluated at this time. Plaintiff need not conclusively establish a prima facie case of retaliation. *Doe*, 970 F.3d 1300, 1311-1312.

**Failure to accommodate.** The statute of limitations of an ADA/§504 failure to accommodate claim "begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Chavez-Bravo v. Brighton Sch. Dist.* 27J, 775 F. Supp. 3d 1142, 1157 (D. Colo. 2025) (citing *Hamer*, 924 F.3d at 1098). Plaintiff was actively misled by Defendants to believe the symptoms of

their disability were their own fault and the bullying was acceptable, allowed, and "universal." SAC ¶¶187-189. Equitable tolling applies. *Biester v. Midwest Health Services, Inc.*, 77 F.3d 1264, 1267-1268 (10th Cir. 1996).

Not only was Plaintiff's disability obvious, they informed Defendants of and Defendants recognized their disability (debilitating anxiety and distress), and how it was impairing Plaintiff's ability to function in class and school. *Id.* ¶¶65-78. Plaintiff requested accommodations, seeking assistance resolving the distressing bullying and addressing a potential communication impairment ("social cues"), in order to participate in class with other students. *Id.* ¶¶65-77, ¶51. Plaintiff need not use "magic words" or mention the ADA to seek accommodations for their disability, rather they "must convey to the employer a desire to remain with the company despite his or her disability and limitations." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1172 (10th Cir. 1999).

"Counseling support" that, on the basis of disability, tells a student being bullied out of class participation their in insistence on being allowed to participate is sexually predatory and the police could get involved is not an "accommodation" – it is abuse.

## IV. Plaintiff has plausibly alleged a CADA violation

Plaintiff has plausibly alleged the Defendants' actions were based, at least in part, on disability, sex, sexual orientation, gender identity, and/or gender expression. See SAC ¶¶122-141, and Plaintiff's Title IX and ADA/§504 response. Whether or not their actions would have been taken "but-for" Plaintiff's gender is a fact-intensive question, and dismissal is not suitable at this time. And even if Defendants' actions were not taken "but for" Plaintiff's gender, Plaintiff still states a plausible CADA claim on the

20

basis of their disability, which uses the same standards as the ADA/§504. Plaintiff has alleged denial of benefits/privileges, see SAC ¶265, ¶91, ¶92. Because CADA is not federal spending clause legislation, the "appropriate person" requirement is not applied.

**V.      The court has subject-matter jurisdiction over Plaintiff's tort claims**

**Plaintiff's CGIA notice was timely**

Defendants misstate the applicable standard and Plaintiff's complaint. Defendants claim that, because Plaintiff had knowledge of their distress or felt ashamed, they were duty-bound to provide a timely notice of claim. The relevant question is not whether they had knowledge of the events in question or even about their distress, but rather whether they knew or should have known they were *wrongfully* injured. *Smith v. Winter*, 934 P.2d 885, 887 (Colo. App. 1997).

*Trinity* clarifies this. "The question is when Trinity knew or should have known that the building was damaged by the tortious act of another rather than a naturally occurring phenomenon such as pre-existing soil conditions." *Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 926 (Colo. 1993). The relevant question here is when Plaintiff knew or should have known their intense distress/anxiety was caused by the tortious act of another, rather than their own wrongdoing or a naturally occurring phenomenon. Additionally, "Patients who rely on their physicians' diagnosis of permanent injury should not be barred from suit because their trust in the physicians prevented earlier discovery of the injury. Nor should patients be compelled to file suit before they are aware of the physician's wrongful conduct." *Smith*, 934 P.2d 885, 887.

Plaintiff's allegations meet these standards. Plaintiff believed, as Defendants,

21

students, and others had asserted, that Plaintiff's intense distress and guilt was caused by a personal deficiency ("missed social cues"), and that the kids' actions, while unpleasant and potentially improper, was not serious enough to cause such an intense emotional response. The only "basic and material" facts Plaintiff was aware of was that some kids had been been mean to them, and they were enduring intense, unending, daily, and constant emotional distress. Plaintiff did not understand the significance of the intentional, targeted, daily, coordinated, and systematic nature of the behavior. Plaintiff was aware of accusations of stalking behavior and warnings of police involvement, but they believed such warnings stemmed from their purportedly unjustified, inappropriate, and predatory intense distress towards the kids. Such a situation made it impossible for Plaintiff to ascertain that their intense feelings were caused by the tortious act of another, rather than merely a natural cause. See **SAC ¶¶187-189** for more explanation.

At the start of Feburary of 2025, when one of the people who Plaintiff had talked to the situation about commented that Plaintiff had "PTSD-type" feelings, Plaintiff looked up the symptoms of and realized their symptoms matched nearly perfectly. Only at this point, did Plaintiff know or have reason to know their intense distress was not inappropriate, unwarranted, or predatory, but rather a medical response to trauma. Plaintiff immediately sought a diagnosis and began investigating the situation and their legal rights, and timely served a notice of claim on the district as required by law.

Defendants appear to have asserted a facial, not factual, attack, and thus, the court cannot weigh evidence and must take Plaintiff's allegations as true. ECF 24 pg. 21. In the event such an attack is factual and Defendants dispute these facts, the court

should allow for limited discovery and an evidentiary hearing. *Trinity,* 848 P.2d 916, 924.

**Defendant Valand's conduct was willful and wanton**

Defendants rely on language from *Martinez v. Est. of Bleck* that the court discussed while surveying competing definitions. But the court did not adopt those definitions. Instead, it held that the common denominator and relevant question under the CGIA was "whether Martinez's conduct exhibited a conscious disregard of the danger." See *Martinez v. Est. of Bleck*, 379 P.3d 315, 323 (Colo. 2016).

Plaintiff has alleged that Defendant Valand was aware that Plaintiff was "absolutely" distressed, the cause of such distress, and the fact it was preventing Plaintiff from being able to focus and function at school. See SAC ¶¶65-77. Defendant Valand was clearly aware of the danger. Yet, he stated, not only that "they can do that," and that it's "not against the rules," but that Plaintiff's resistance was sexually predatory and they could get in serious trouble with the police for objecting. See *Id.* ¶¶84-108, ¶¶91-98. This clearly shows that Defendant Valand was both aware of the severe harm Plaintiff was suffering and chose to take affirmative action by supporting it as the other students' "right," and warn Plaintiff of serious, criminal consequences for pushing back.

**VI.    Plaintiff has plausibly alleged extreme and outrageous conduct**

"Although the jury ultimately determines whether conduct is outrageous, a court must first determine if reasonable persons could differ on the question. In determining whether a plaintiff has alleged behavior that is outrageous as a matter of law, the trial court must analyze the totality of the defendant's conduct." *Han Ye Lee v. Colorado Times, Inc.*, 222 P.3d 957, 963 (Colo. 2009) (citations omitted). Courts have have found

sufficient facts to sustain an extreme and outrageous claim in a variety of situations. *Id.* (collecting cases). The court must resolve all reasonable inferences in Plaintiff's favor. Courts routinely find outrageous conduct where the Defendant abuses actual or apparent authority. *Zalnis v. Thoroughbred Datsun Car Co.*, 645 P.2d 292, 294 (Colo. App. 1982). Or based on awareness of known vulnerability to distress. Colorado Pattern Civil Jury Instructions, Chapter 23:2, *Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977 at 991 (Colo. App. 2009). Or upon spreading misleading and shameful narratives. *Han*, 222 P.3d 957, 963-964. Or upon using baseless threats to compel compliance. *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753. Plaintiff's situation contains all these elements.

Plaintiff has alleged their distress was caused by systematic bullying in class intended to isolate and to drive Plaintiff out, not an "unrequited friendship," and Defendants were aware of the students' actions (SAC ¶¶36-64) and the distress it was causing Plaintiff (*Id.* ¶¶65-78), demonstrating awareness of Plaintiff's vulnerability to such distress. In response, on the basis of sex and disability, and without an investigation, Valand leveraged their authority to frame Plaintiff's distress and insistence on participating as sexually predatory ("stalking behavior"), propagating this assessment with their parents and other staff, and warning Plaintiff they could get in serious trouble with the police for continuing to push back. *Id.* ¶¶79-118. This ultimately resulted in years of distress and Plaintiff being diagnosed with PTSD. *Id.* ¶¶182-194. Courts have allowed similar extreme and outrageous claims to proceed. *Jane Doe v. DC*, No. 23-7135 pg. 26, (DC. Cir. Aug. 19, 2025) (allowing an extreme and outrageous claim to proceed against a school employee who worked to undermine and shame a student for

24

their Title IX complaint). Given the totality of Defendant's conduct, a reasonable juror could conclude that such conduct was extreme and outrageous.

## VII.    Plaintiff has plausibly alleged negligence

Plaintiff has plausibly alleged negligence, not negligent infliction of emotional distress. The conduct was willful and wanton, as explained above.

## VIII.    Plaintiff has plausibly alleged failure to report

The claim is not time-barred. Defendants' authority is regarding the criminal statute of limitations for failure to report, whose statute of limitations is not tolled. The civil right of action falls under C.R.S. § 13-81-103, for which minors are "persons under disability." C.R.S. § 13-81-101(3) Plaintiff ceased being a minor in February of 2024.

The issue is not whether the kids were immature or cruel, rather whether Defendants were aware of an "act or omission in one of the following categories that threatens the health or welfare of a child." Defendants were aware of an act or omission: it was the duty of the school – not "teenage" kids – to ensure students are safe in class. Defendant was aware Plaintiff's health and welfare was substantially impaired – they were aware of "absolutely" distressing, constant bullying and knew Plaintiff was experiencing suicidal thoughts towards the situation. SAC ¶66-69. They deliberately supported the students' abusive behavior, threatened Plaintiff for continuing to object, and failed to report because of Plaintiff's sex and disability. SAC ¶295, ¶¶79-108. This resulted in Plaintiff taking further action which endangered their life, enduring years of distress, and ultimately a PTSD diagnosis. SAC ¶¶182-194. These facts meet the statutory definition of emotional abuse. SAC ¶285. Plaintiff does not compare their

25

situation with the other categories of child abuse; there are many ways a minor's welfare can be harmed; this is reflected by the statutory language ("one of").

### Conclusion

For the reasons stated above, Defendants' motion to dismiss should be denied. In the alternative, Plaintiff respectfully requests leave to amend to cure any deficiencies. "The court should freely give leave when justice so requires." See F.R.C.P. 15. Because this case concerns a complex multi-year situation, and because Plaintiff is *pro se* with a limited understanding of the law and PTSD, they may know of relevant facts which did not arise or appear relevant at time of drafting. Plaintiff's initial amendment was filed only a few weeks after counsel for Defendants was assigned and granted a 60-day extension (ECF 11), and included only minor changes and an added claim.

Respectfully submitted this 20th day of May 2026.

/s/ Riley Doe
Riley Doe
rileydoevsssd@gmail.com
Pro Se Plaintiff
Plaintiff proceeding under pseudonym
Real name and address information filed under seal

## CERTIFICATE OF SERVICE

I hereby certify that on May 20th, 2026, I electronically filed the foregoing with the U.S. District Court of Colorado CM/ECF System which will notify the following:

Elliott V. Hood
CAPLAN AND EARNEST LLC
3107 Iris Avenue, Suite 100
Boulder, Colorado 80301
303-443-8010
ehood@celaw.com

Zoe Verhoeven
CAPLAN AND EARNEST LLC
3107 Iris Avenue, Suite 100
Boulder, Colorado 80301
303-443-8010
zverhoeven@celaw.com